**David ADAMSKI and Kathy Adamski, Appellants,**

v.

**ALLSTATE INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued May 13, 1999.

Filed Sept. 22, 1999.

Marvin O. Schwartz, Bethlehem, for appellants.

Bonnie S. Stein, Morrisville, for appellee.

Before FORD ELLIOTT, J., MONTEMURO, J.* and TAMILIA, J.

TAMILIA, J.:

¶ 1 Appellants, David and Kathy Adamski, appeal from the November 5,

* Retired Justice assigned to Superior Court.

1998 Order granting appellee Allstate's motion for summary judgment in this insurance bad faith action.

¶ 2 This case arose from a motor vehicle accident that occurred on July 19, 1984. The accident involved a motorcycle driven by appellant, David Adamski, and an automobile driven by Ronald Miller, in which Patricia Dooley was also an occupant. The vehicle driven by Miller was owned by Dooley's mother, Madalyn Gower, and insured by appellee under a policy with a $50,000 per person liability limit. Appellants ultimately commenced a lawsuit against Miller and Gower. The claim against Gower was voluntarily discontinued prior to trial and the case proceeded against Miller alone. By letter dated April 2, 1986, appellee Allstate denied liability protection to Miller on the basis that he was not a permissive driver of Gower's vehicle. On November 27, 1989, a jury returned a verdict against Miller in the amount of $305,000.[1] On January 14, 1991, appellants entered judgment on the verdict.

¶ 3 Thereafter, on August 19, 1992, Miller verbally assigned his rights against appellee to appellants. Appellants then instituted a garnishment proceeding against appellee alleging that Miller was a permissive driver of Gower's vehicle and thus insured by appellee. On January 20, 1993, the Court of Common Pleas of Northampton County ruled Miller was a permissive user of Gower's vehicle. Appellee appealed to this Court and, on May 3, 1994, we reversed on the basis that Miller had neither express nor implied consent to drive Gower's vehicle. *Adamski v. Miller*, 434 Pa.Super. 355, 643 A.2d 680 (1994). Thereafter, on August 21, 1996, the Supreme Court reversed this Court and found Miller had implied consent to drive Gower's vehicle. *Adamski v. Miller*, 545 Pa. 316, 681 A.2d 171 (1996).

1. The jury awarded $265,000 in compensatory damages to David Adamski and $40,000 consortium damages to Kathy Adamski.

Following the Supreme Court's ruling, appellee paid appellants the $50,000 policy limits as well as interest in the amount of $11,000.

¶ 4  The instant action was commenced on November 9, 1993, when appellants filed a writ of summons.  On January 17, 1997, appellants filed a complaint alleging that appellee committed common law and statutory bad faith by failing to defend, indemnify or otherwise protect the interests of Ronald Miller.  On June 23, 1998, appellee filed a motion for summary judgment.  In its motion, appellee argued that appellants' claims for bad faith were barred by the statute of limitations and should be dismissed for failure to state a cause of action.  Appellee also argued that appellants' statutory bad faith claim, asserted under 42 Pa.C.S.A. § 8371,[2] was barred because it accrued prior to July 1, 1990, the effective date of the statute.  By Order dated November 5, 1998, the trial court granted appellee's motion for summary judgment.  In granting the motion, the trial court found that any bad faith claim possessed by appellants arose on April 2, 1986, the date appellee denied coverage to Ronald Miller.  Since appellants' complaint was not filed until November 9, 1993, the court ruled the common law claim untimely regardless of whether a two, four or six-year statute of limitations was applied.  Similarly, the court deemed appellants' statutory bad faith claim untimely because it arose prior to July 1, 1990, the effective date of section 8371.

■  ¶ 5  On appeal, appellants urge us to draw a distinction between bad faith actions premised on a refusal to pay and those premised on a refusal to defend or indemnify.  Although appellants agree the former actions arise when an insurer initially refuses payment, they argue the latter actions do not arise until the termination of litigation.  In this case, appellants claim, the litigation did not terminate until January 14, 1991, the date on which they entered judgment on the jury verdict against Miller.  Since they commenced this bad faith action on November 9, 1993, appellants argue that, depending upon which statute of limitations is applied, there is at least a genuine issue of material fact as to whether their action was timely.  As a result, summary judgment was improper.  Finally, appellants claim that since the judgment against Miller was entered after July 1, 1990, their action was also timely under 8371.  (Appellants' Brief at 8–9.)

¶ 6  Our standard of review following the grant of summary judgment is well-settled.  Summary judgment is properly entered where the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Pa.R.C.P. 1035.1–.5; *Cosmas v. Bloomingdales Bros., Inc.*, 442 Pa.Super. 476, 660 A.2d 83 (1995).  The trial court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party.  *Aetna Casualty and Surety Co. v. Roe*, 437 Pa.Super. 414, 650 A.2d 94 (1994).  The burden is on the moving party to prove that no genuine issue of fact exists.  *Accu–Weather v. Prospect Communications*, 435 Pa.Super. 93, 644 A.2d 1251 (1994).  However, when the moving party carries its initial burden, the adverse party may not rest upon the allegations or denials contained in the pleadings, but must respond by showing there is a genuine issue for trial.  If the adverse party does not so

**2.**  42 Pa.C.S.A. 8371 provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate plus 3%.
(2) Award punitive damages against the insurer.
(3) Assess court costs and attorney fees against the insurer.
*Id.*

respond, summary judgment will be entered in favor of the moving party. *Ertel v. Patriot–News Co.*, 544 Pa. 93, 674 A.2d 1038 (1996). Finally, in considering the trial court's ruling, we are not bound by the court's conclusions of law, but may draw our own inferences and reach our own conclusions. *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646 (1995). For the following reasons, we conclude summary judgment was properly entered in favor of appellee.

■■■■ ¶ 7 Section 8371 was passed by the legislature in 1990 to rectify the lack of a common law remedy for bad faith conduct in denying an insured's claim. *Romano v. Nationwide*, 435 Pa.Super. 545, 646 A.2d 1228 (1994).[3] Although the statute does not define "bad faith," a uniform definition of this term has developed in the context of insurance litigation:

> "Bad faith" on the part of insurer is any frivolous or unfounded refusal to pay proceeds of policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Black's Law Dictionary 139 (9th ed.1990) (citations omitted); *see also Rottmund v. Continental Assurance Co.*, 813 F.Supp. 1104, 1108 (E.D.Pa.1992) (*quoting* Black's Law Dictionary). To establish bad faith under section 8371, our Court has utilized a two-part test, both elements of which must be established by clear and convincing evidence: (1) the insurer lacked a reasonable basis for denying coverage; and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis. See *Terletsky v. Prudential Property & Casualty Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680 (1994). Finally, as the parties ac-

knowledge, section 8371 applies to insurance contracts entered prior to the statute's effective date, July 1, 1990, so long as the bad faith conduct occurred after that date. See *Colantuno v. Aetna Ins. Co.*, 980 F.2d 908 (3d Cir.1992).

¶ 8 As recognized by the trial court and both parties, resolution of the instant case turns on a determination of the date on which appellants' bad faith claims arose for purposes of the statute of limitations and section 8371. Initially, we note appellants' claim that summary judgment was inappropriate because genuine issues of fact exist as to whether their claims were time-barred. Appellant's argument confuses an issue of fact with an issue of law. The facts relevant to the motion for summary judgment are not in dispute. Both parties agree that appellee's denial of coverage occurred on April 2, 1986, that judgment on verdict against Miller was entered on January 14, 1991, and that the instant bad faith action was commenced on November 9, 1993. Thus, there is no relevant factual dispute. Rather, the parties differ on when appellants' cause of action for bad faith arose. This is a question of law and, if correctly resolved by the trial court, it is the proper subject of summary judgment.

¶ 9 Noting the paucity of state cases on the issue of when bad faith claims arise, appellants rely on several cases decided by federal courts applying Pennsylvania law. Although these cases did not expressly consider when common law bad faith arises for purposes of the statute of limitations, appellants argue, and we agree, that the cases are relevant because they address the analogous question of when bad faith actions arise for purposes of section 8371. Both before the trial court and on appeal, appellants principally rely on *Liberty Mutual Insurance Co. v. Paper Manufacturing Co.*, 753 F.Supp. 156 (E.D.Pa. 1990), in which an insured brought a counterclaim against an insurer for bad faith

---

**3.** The propriety of appellants' instant claim for common law bad faith is discussed infra at note 9.

under section 8371. The insurer moved to dismiss the counterclaim on the basis that the alleged bad faith conduct occurred before the effective date of section 8371. The court ruled the statute should not be applied retroactively and dismissed the counterclaim with respect to conduct occurring before July 1, 1990. The court found that the insured nonetheless had a claim under 8371 for conduct after the effective date, however, because "Liberty's 'failure to efficiently, effectively, and professionally manage the outstanding claims continues to date[.]' " *Id.* at 159–160 (citation omitted).

¶ 10 While appellants claim that *Liberty 's* finding of continuing bad faith conduct is favorable to their position, we disagree for two reasons. Initially, appellants' bad faith claims in this case do not relate to the management of Miller's claim. More importantly, the same district court which issued *Liberty* deemed its precedential value "limited" two years later. In *Barbaro v. Old Line Life Insurance Company of America*, 785 F.Supp. 70 (E.D.Pa.1992), a widow filed suit against the defendant insurer alleging breach of contract and bad faith under section 8371 after the insurer refused to pay the proceeds of a life insurance policy taken out by plaintiff's husband, to which plaintiff was the beneficiary. It was undisputed that the insurer's refusal to pay was first communicated to plaintiff prior to the effective date of section 8371. Nonetheless, like appellants herein, the plaintiff in *Barbaro* argued that, under *Liberty*, the insurer's refusal of coverage continued after July 1, 1990, and thus brought her bad faith claim within the purview of section 8371. In rejecting this claim and granting the insurer's motion for judgment on the pleadings, the Court held:

> The persuasiveness of [*Liberty* ] is limited in that the opinion does not delineate what actions undertaken by the insurer constituted 'ongoing conduct,' or what were the 'outstanding claims' which the

court determined to be actionable. Notwithstanding any ambiguity as to the breadth of *Liberty 's* holding, several courts have squarely held that when a refusal to provide coverage is made before the effective date of the statute, "the fact that the alleged failure to timely pay continued after the effective date of section 8371 does not bring the claim within the purview of the statute. To hold otherwise would be to suggest that with each day of refusal is created a new and independent tort. The continued alleged bad faith acts are merely acts arising from the original claim of denial of coverage." *McGrath v. Federal Ins. Co.,* [1991 WL 185247] 1991 U.S.Dist. LEXIS 13026 (E.D.Pa.1991). See also, *Shamusdeen v. The Hartford Ins. Co.,* [1991 WL 108675] 1991 U.S.Dist.LEXIS 8112 (E.D.Pa.1991); *Sutton v. The Home Ins. Co.,* [1991 WL 16635] 1991 U.S.Dist.LEXIS 1640 (E.D.Pa.1991); *Wazlawick v. Allstate Ins. Co.,* [1990 WL 294273] 1990 U.S.Dist.LEXIS 15986 (E.D.Pa.1990).

*Id.* at 71. The *Barbaro* court then found the reasoning of these latter cases persuasive and concluded, "Absent any allegation in the complaint that, after July 1, 1990, Old Line engaged in conduct amounting to bad faith independent of its initial denial of coverage, defendant's motion must be granted." *Id.*

¶ 11 Appellants seek to distinguish *Barbaro* on the basis that it did not involve "any bad faith conduct other than the [initial] denial of insurance benefits." (Appellant's BRIEF at 12.) In contrast, appellants contend, their complaint alleged a number of acts of bad faith that occurred after July 1, 1990. These acts include the following: (1) permitting a judgment for money damages to be entered against Miller without providing him with a defense, offering to indemnify him, or otherwise taking measures to protect his interests; (2) denying liability protection to Miller and refusing to defend or indemnify him in the tort action based solely upon

an in-house decision that he was a non-permissive user of the vehicle without first obtaining a judicial determination [via a motion for declaratory judgment] on that issue; (3) permitting a judgment in excess of the per person bodily injury liability limit of the Gower policy without offering to settle or compromise the tort action; (4) denying liability protection to Miller without a factual or legal basis to do so; and (5) exposing Miller to personal pecuniary loss without diligent investigation and an objective appraisal of the basis for its denial. (Appellant's Brief at 13.) According to appellants, these allegations relate to bad faith conduct which occurred during litigation and, since the litigation did not end until judgment was entered on January 14, 1991, appellants' actions were timely under both section 8371 and the four-year statute of limitations applicable to bad faith actions based on breach of contract. ·We reject this argument.

▉▉▉▉ ¶ 12 Appellants' allegations can be summarized as follows: (1) failure to defend or indemnify Miller; (2) denial of liability protection, a defense, and indemnity without first seeking a declaratory judgment; (3) failure to settle or compromise appellants' claim; (4) lack of an adequate basis for denying protection, a defense, and indemnity; and (5) failure to conduct a diligent investigation. Despite appellants' attempt to parse appellee's consistent denial of coverage into numerous separate acts of alleged bad faith, it is clear that each of the allegations relate to conduct that began prior to July 1, 1990. In light of appellee's denial of coverage to Miller, which denial was communicated by letter on April 2, 1986, it should have been obvious to all that appellee would not protect, defend, or indemnify Miller. Indeed, contrary to appellants' attempt to construe the letter as merely denying payment of

any claims against Miller, the letter informed Miller that Allstate:

> hereby disclaims and denies any and all liability or obligation to you[.] ... The Allstate Insurance Company will take no further action with respect to any claim which you may have against it or with respect to any claim or suit against you which has arisen, or which may arise out of the said accident and hereby withdraws from the matter entirely.

Exhibit C to Appellee's Memorandum of Law in Support of Motion for Summary Judgment. This letter clearly informed Miller that Allstate disclaimed "any and all liability or obligation" to him, that it would take "no further action" with respect to current or future claims against him, and that it "hereby withdraws from the matter entirely." Reasonably construed, this letter indicated Allstate would neither pay outstanding claims against Miller nor defend or indemnify him in future litigation. All of the bad faith conduct alleged by appellants was again visible on November 27, 1989, when a jury verdict was returned against Miller without any defense, indemnification, settlement offer or other action by appellee. Accordingly, in both the 1986 letter and the 1989 trial, appellee engaged in the very conduct which lies at the heart of appellants' allegations (1) and (2), to wit, that appellee failed to protect, defend, or indemnify Miller without first seeking a declaratory judgment.[4] As to allegation (3), appellee's letter clearly announced its refusal to settle or compromise any existing or future claims on behalf of Miller. This refusal was reaffirmed when appellee failed to participate in Miller's 1989 trial. Finally, according to allegations (4) and (5), appellee's·decision to deny coverage, a defense or indemnification, was made without an adequate factual basis or diligent investigation. However, since the decision was first communicated by the 1986 letter,

---

**4.** We are not aware of, and appellants do not cite, any authority holding that the failure to seek a declaratory judgment prior to refusing coverage constitutes bad faith as a matter of law. At any rate, even assuming the existence

of such precedent, appellee's denial of coverage to Miller without seeking a declaratory judgment was apparent in April, 1986, seven and one-half years before appellants filed the instant action.

the allegedly faulty fact-finding or investigation upon which the decision was based necessarily preceded the 1986 letter. Simply put, all of the conduct underlying appellant's bad faith allegations was apparent in April, 1986, when appellee made clear its position with regard to Ronald Miller. Miller could have commenced an action against appellee based on its denial of coverage at any point after the 1986 letter. Although appellants did not receive an assignment from Miller until August 19, 1992, more than two years after the effective date of section 8371, they did not acquire greater rights than Miller possessed to pursue a bad faith action.[5] See *Smith v. Cumberland Group*, 455 Pa.Super. 276, 687 A.2d 1167 (1997) ("Where an assignment is effective, the assignee stands in the shoes of the assignor[.]"). Since all of the acts alleged by appellants "[arose] from the original ... denial of benefits" and were not "independent of [the] initial denial of coverage," they do not constitute separate acts of bad faith. *Barbaro, supra*. Accordingly, since appellants do not allege any separate acts of bad faith that occurred on or after the effective date of section 8731, their statutory bad faith claim is barred.[6] Moreover, since the suit was not commenced until seven and one-half years after the cause of action arose, any common law claim possessed by appellants was untimely.[7]

5. Nor can it be argued that the timeliness of appellants' bad faith claim depended upon our Supreme Court's ruling that Miller was a permissive user of Madalyn Gower's vehicle, which ruling required appellee to pay the policy limits. A bad faith action under section 8371 is neither related to nor dependent on the underlying contract claim against the insurer. See *March v. Paradise Mutual Insurance Co.*, 435 Pa.Super. 597, 646 A.2d 1254 (1994) ("a claim brought under section 8371 is a cause of action which is separate and distinct from the underlying contract claim."). As a result, Miller (and, by extension, appellants) were not required to wait until the merits of the contract claim were decided to file suit for bad faith. See *Boring v. Erie Insurance Group*, 434 Pa.Super. 40, 641 A.2d 1189 (1984) (holding that although the issue of coverage had not yet been decided, appellant's action under 8371 was a separate claim and the dismissal of that claim was instantly appealable); and *Margolies v. State Farm Fire & Casualty Co.*, 810 F.Supp. 637 (E.D.Pa.1992) ("Even if plaintiff's breach of contract claim were barred by the policy's limitation provision, the 8371 bad faith claim would survive, since it is independent of the underlying claim."). By filing the instant action in 1993, appellants apparently recognized that they were not required to await a judicial determination of the coverage issue.

6. As the trial court and the parties recognize, courts applying Pennsylvania law have differed on the question of which statute of limitations applies to a bad faith action under section 8371. *See e.g., Nelson v. State Farm Mutual Automobile Insurance Co.*, 988 F.Supp. 527 (E.D.Pa.1997) (applying a two-year statute of limitations applicable to tort actions under 42 Pa.C.S.A. § 5524); *Woody v. State Farm Fire and Casualty Co.*, 965 F.Supp. 691 (E.D.Pa.1997) (applying the six-year "catchall" statute of limitations under 42 Pa. C.S.A. § 5527); *Susich v. Prudential Property and Casualty Insurance Co.*, 52 Beaver L.J. 168, 1998 WL 663286 (1998) (two-year statute of limitations); and *Mantia v. Northern Insurance Co. of New York*, 76 Lanc. L.R. 250, 1998 WL 1108814 (1998) (six-year statute of limitations). Nonetheless, having determined that an action under 8371 is not available to appellants, we must wait for an appropriate case to resolve the question of which limitations period applies to the statute.

7. Although neither party nor the trial court has raised this issue, we note that whether and to what extent Pennsylvania law recognized, or continues to recognize, an action for common law bad faith is not entirely clear. In *D'Ambrosio v. Pennsylvania National Mutual Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981), our Supreme Court expressly declined to create a cause of action for bad faith. While the Court did not distinguish between bad faith actions sounding in tort and those sounding in contract, the action in that case was brought in tort. See Christopher Hasson, "The 1990 Pennsylvania Auto Insurance Law: An Analysis of 'Bad Faith' and the 'Limited Tort Option,'" 29 Duq.L.Rev. 619, 630 (1991) ("The *D'Ambrosio* court ... [held] there was no need to construct a first party 'bad faith' tort."). In declining to create a new cause of action, the Supreme Court did not distinguish authoritative rulings that had long recognized bad faith actions sounding in contract. *See e.g., Gray v. Nationwide Insurance*, 422 Pa. 500, 223 A.2d 8 (1966); *Cowden v. Aetna Casualty and Surety Co.*, 389 Pa. 459,

¶ 13 The important distinction between an initial act of alleged bad faith conduct and separate later acts of such conduct is further emphasized by a second case relied upon by appellants. In *Rottmund v. Continental Assurance Co.*, *supra*, an insurer filed a motion for summary judgment in a section 8371 bad faith action, alleging that its denial of the plaintiff's claim occurred prior to July 1, 1990. The court denied the motion, finding nothing to suggest "that section 8371 does not cover insurer misconduct during litigation after the denial of a claim." *Id.* at 1109. It is apparent, however, that *Rottmund* is factually distinguishable from the instant case. Initially, it is important to recognize that the plaintiff in *Rottmund* asserted that, after the initial denial of benefits, the insurer had engaged in two separate acts of bad faith: (1) "the intentional misdesignation of a corporate deponent" and (2) "concealment of the absence of new facts and circumstances which would justify the defendant's denial of its own prior allegations[.]" *Id.* at 1109 (citation omitted). These alleged acts of bad faith were subsequent to and distinct from the initial denial of benefits and both occurred after the effective date of section 8371. In light of our finding that appellants have not alleged acts of bad faith unrelated to and separate from the initial denial of coverage, *Rottmund* does not assist appellant's argument.

¶ 14 Additionally, *Rottmund* is perhaps the clearest statement available of the standard applicable to appellants' claim under section 8731. Although it noted that neither the Third Circuit nor Pennsylvania appellate courts had addressed "what constitutes post-enabling date activity giving rise to liability under Section 8371," the Court considered analogous cases and stated the applicable standard as follows:

> For purposes of applying Section 8371, one must look to the date on which the defendant insurance company first denied the insured's claim in bad faith. If that date is prior to July 1, 1990, the insured's claim under Section 8371 is barred. If the insurer denies the claim prior to July 1, 1990 and then reaffirms that denial after July 1, 1990, the insured's claim is barred. If the insurer denies the claim before July 1, 1990 and then undertakes additional acts of bad faith, the insurer can be liable for those additional acts under Section 8371 if the acts occur after the July 1, 1990 enabling date.

*Id.* at 1106 (also stating that, "[t]he post-enabling date activity must be separate acts of bad faith, not a continuation of a previous denial.") (citation omitted). A number of other courts have also held that continuing denials of coverage or refusals to defend after July 1, 1990 do not subject an insurer to liability under section 8371 where the initial denial or refusal was communicated prior to that date. For example, in *Wazlawick*, *supra*, plaintiffs brought a bad faith action against Allstate under section 8371, despite the fact that Allstate had denied coverage in December, 1989. Allstate raised the effective date of section 8371 in defense, and plaintiffs countered "that the denial of coverage is a continuing wrong because Allstate has not agreed to coverage as of this date, and therefore the wrong has occurred after the effective date of the statute." *Id.* The

<hr>

134 A.2d 223 (1957). Subsequent cases have also recognized bad faith contract actions. *See e.g., Reid v. Ruffin,* 503 Pa. 458, 469 A.2d 1030 (1983); *Hall v. Brown,* 363 Pa.Super. 415, 526 A.2d 413 (1987), *appeal denied,* 522 Pa. 624, 564 A.2d 916 (1989). Just as *D'Ambrosio* did not mention the contract cases that preceded it, these latter cases did not mention *D'Ambrosio*. This ambiguity as to the viability and scope of common law bad faith claims was recognized by Justice Cappy in *Johnson*

*v. Beane,* 541 Pa. 449, 664 A.2d 96 (1995) (Cappy, concurring). As a result of this ambiguity, it is not clear whether appellants' claim in the instant case for common law bad faith is recognized by our law. Nonetheless, in light of our determination that any common law claim possessed by appellants, even if cognizable, is barred by the statute of limitations, we need not address the apparent ambiguity arising from the aforementioned Supreme Court cases.

Court rejected this claim, reasoning as follows:

> Plaintiffs' argument is without merit. Although admittedly no case law exists relating to this particular statute, this situation may be analogized to the tolling of a statute of limitations for a breach of contract action. As has long been held by Pennsylvania courts, the tolling of the statute begins at the time of the initial breach, whether or not the breach continues throughout the trial. Therefore, we find that the denial of coverage is the action which determines whether 42 Pa.C.S.A. 8371 may apply in this case. Since the effective date of the statute is after Allstate's [bad faith] action, [8371] does not apply[.]

*Id.* (citations omitted). Similarly, in *American Int'l Underwriters Corp. v. Zurn Industries, Inc.*, 771 F.Supp. 690 (W.D.Pa.1991), the Court held:

> Zurn asks us to hold that Insurer's refusal to indemnify is a "continuing" violation consisting of daily bad faith denials, and that as such, each of [t]he Insurers' 'non-payments' is an action occurring after [8371's] effective date which ought to give rise to liability even with a purely prospective application. Such a construction has been sagaciously rejected by all the legal authority that has considered it ... and we decline Zurn's invitation to forge a new path. Such a construction would obviously require insurance companies to reopen all claim files which had been denied prior to July 1990. Not only would that effect be costly, burdensome, and without advantage, but it would also be inconsistent with the repose sought to be protected by prospective application. Given the unassailable conclusion that the section is not retroactive, it would be internally inconsistent, as well as bad policy, to construe the statute as suggested by Zurn.

*Id.* at 703 (citations omitted); *see also Trustees of Local 98 Pension Plan v. Aetna Casualty and Surety Company*, 1999 WL 116285, 1999 U.S.Dist.LEXIS 2424 (1999) ("Courts, however, have rejected attempts to impose liability under section 8371 for conduct before July 1, 1990 on a 'continuing violation' theory. Thus, while an insurer may be liable for an independent act of bad faith committed on or after July 1, 1990, there is no liability for an insurer's reaffirmation on or after July 1, 1990 of bad faith conduct preceding July 1, 1990."); *Ravnell v. Minnesota Mutual Life Inc.*, 1992 WL 203317, 1992 U.S.Dist.LEXIS 12225 (1992) ("It is uncontroverted that defendant denied plaintiff's claim in writing on April 26, 1990. That an insurer continues to deny a claim after the effective date does not subject it to liability under section 8371.") (citations omitted).

¶ 15 Appellants seek to distinguish these cases on the basis that they involved only an initial (although continuing) refusal to pay a claim, whereas the instant case involves not only the initial denial, but also subsequent refusals to defend or indemnify. In this regard, appellants argue: "[W]hen the insured alleges merely the continuing refusal to pay benefits, the nature and extent of damages can generally be determined as of the date of the initial refusal. However, the full extent of litigation damages cannot be determined and do not even arise until the litigation concludes and the need for indemnification does not arise until judgment is entered. At the time of the original denial, Miller's damages were merely speculative." (Appellants' Brief at 12–13.) Initially, as noted, appellants misconstrue appellee's letter of April 2, 1986. It was not merely an initial "refusal to pay benefits." Instead, appellee clearly disclaimed any and all obligations and refused all further actions with regard to existing or future claims against Miller. Thus, reasonably construed, the letter was a refusal to cover, defend, indemnify or otherwise protect Miller. Moreover, we reject appellants' claim that they were required to file suit only when "the full extent of litigation damages" was

known and "the need for indemnification" arose. To the contrary, our Court has repeatedly held that, for purposes of the statute of limitations, a claim accrues when a plaintiff is harmed and not when the precise amount or extent of damages is determined. *See e.g., Manzi v. H.K. Porter Co.*, 402 Pa.Super. 595, 587 A.2d 778 (1991), *app. denied*, 530 Pa. 644, 607 A.2d 254 (1992); *Liberty Bank v. Ruder*, 402 Pa.Super. 561, 587 A.2d 761, 765 (1991); *Pashak v. Barish*, 303 Pa.Super. 559, 450 A.2d 67 (1982). Instantly, the alleged harm to Miller (and thus appellants as assignees) occurred when appellee's position was made clear by the 1986 letter and appellee maintained that position by subsequently refusing to defend or indemnify Miller. As the aforementioned cases indicate, appellants may not separate initial and continuing refusals to provide coverage into distinct acts of bad faith.[8]

▮▮▮▮ ¶ 16 In conclusion, we find that appellants have alleged no separate acts of bad faith conduct occurring after the effective date of section 8371 or within the statute of limitations applicable to any viable claim of common law bad faith. Instead, appellants' allegations relate to conduct that merely reaffirmed the position appellee clearly set forth in the letter of April 2, 1986. *Rottmund, supra* ("If the insurer denies the claim prior to July 1, 1990 and then reaffirms that denial after July 1, 1990, the insured's claim is barred."). It is hornbook law that a statute of limitations begins to run as soon as the right to institute suit arises. *Centre Concrete Co. v. AGI, Inc.*, 522 Pa. 27, 559 A.2d 516 (1989). This is true regardless of whether the full extent of harm is known when the action arises. *Manzi, Liberty Bank, Pashak, supra*. Here, appellee's 1986 letter clearly put Miller on notice

---

8. In support of their claim that a bad faith action does not accrue until the end of litigation, appellants cite *UTI Corp. v. Fireman's Fund Ins. Co.*, 896 F.Supp. 362 (D.N.J.1995) (applying Pennsylvania law). In that case, an action was commenced against UTI in 1981 based on its alleged responsibility for groundwater contamination. The Home Insurance Company entered a defense on behalf of UTI under a policy with a liability limit of $500,000. However, Fireman's Fund, an excess carrier, denied coverage by letter dated May 14, 1981. On July 2, 1992, immediately prior to trial, the case was settled for $900,000. Home tendered the policy limits and UTI paid the remaining $400,000 out of pocket. UTI then *commenced an action against Fireman's* Fund alleging breach of insurance contract and bad faith under section 8371. Fireman's Fund moved for summary judgment on the basis that the statute of limitations as to both counts was expired, having been commenced by the May 14, 1981 letter denying coverage. The motion for summary judgment was denied. According to appellants, the *UTI* court "held that the bad faith action did not accrue until the parties settled the action on the eve of trial[.]" (Appellants' Brief at 12.) Appellants misconstrue the holding of *UTI*. The court's holding that the statute of limitations did not commence until settlement applied only to the breach of contract action. This holding was premised on the fact that, until settlement, UTI "could not have known that the limits of the Home policy would be exceeded and that it would need to pay $400,-

000 out of pocket to consummate settlement on the action." *Id.* at 368. As to the bad faith claim, the court also denied the motion for summary judgment, but not because the 1981 denial of coverage constituted bad faith that continued beyond the effective date of 8371. Instead, noting that UTI's complaint alleged bad faith for failing to conduct a complete investigation, the court concluded that UTI's cause of action related to a letter dated April 1, 1992, in which Fireman's Fund informed UTI that it had not completed an investigation and that UTI should take steps to protect itself against the possibility of a settlement that exceeded Home's policy limits. Since UTI filed suit within months of that letter, the court deemed its action timely under section 8371. In a footnote, the court emphasized the distinction between conduct occurring before July 1, 1990 and conduct occurring after that date:

> Because there are allegations of conduct after July 1, 1990 upon which plaintiff is proceeding, for example, the April, 1992 denial letter of [Fireman's Fund], defendant's argument that Count V must be dismissed in its entirety must be rejected. However, this court recognizes that plaintiff may not proceed to recover for bad faith conduct of the defendants ... which occurred prior to the effective date of the statute, July 1, 1990, as the statute has no retroactive application.

*Id.* at 368–369 n. 5 (citation omitted).

that he would not be covered, defended or indemnified in existing or future actions under the policy issued by appellee to Madalyn Gower. Appellants, who stand in Miller's shoes, *Smith, supra,* cannot now avoid the effective date of section 8371 or an applicable statute of limitations by asserting that the continuing refusal to cover Miller was a separate act of bad faith.[9]

¶ 17 Accordingly, the November 5, 1998 Order granting appellee's motion for summary judgment is affirmed.

¶ 18 Order affirmed.

9. Our conclusion that appellants' claims are time-barred renders moot the contested question of whether appellee's denial of coverage to Miller was in bad faith.