## Galko v. Harleysville Pennland Insurance Co.

C.P. of Lackawanna County, no. 02-CV-2778.

*Matthew P. Barrett,* for plaintiff.
*Thomas F. Reilly* and *Robert C. Price,* for defendants.

MINORA, *J.,* January 18, 2005—

## INTRODUCTION

The present matter is before the court by way of the plaintiff's motion for partial summary judgment pursuant to Pa.R.C.P. 1035 to which the defendant filed a timely response, brief in opposition to said motion, as well as its own motion for summary judgment. The parties have presented their respective arguments to the court and we now consider this matter ripe for disposition. The allegations as set forth in the pleadings are as follows:

## STATEMENT OF THE CASE

The plaintiff, Jennifer Galko, was involved in a motor vehicle accident on April 24, 2000, from which the plaintiff has sustained personal injuries. The collision occurred at the intersection of Fallbrook and Hospital Streets in Carbondale, Pennsylvania. Occupying the plaintiff's vehicle, a 1996 Chevrolet Cavalier, were the plaintiff, Jennifer Galko and two passengers. The aforementioned accident involved two other vehicles, a Chevrolet truck, owned and operated by Thomas Vadella and a Subaru sedan, owned and operated by Betsey Savage. (See Janice Cobb's complaint p. 1.) At the time of the accident, the plaintiff maintained a policy of automobile insurance, policy *** ** ** **, issued by Pennland Insurance Company and carried by Harleysville Insurance Company (Harleysville). The insurance policy in question was issued in August 1998. It extended coverage upon a 1985 Buick LeSabre registered to the plaintiff and it extended first-party medical benefits coverage in the amount of $5,000 as well as liability coverage.[1] (See defendant's

---

1. The plaintiff paid monthly premiums upon said policy as was required under her insurance contract. According to the Amendment

exhibit C, p. 9.) On April 25, 2000, the day following the accident, Galko notified the defendant of her claim under the first-party provisions of the policy. The defendant asserts that this was the first notification that it received from the insured in regard to her purchase of the 1996 Chevrolet. Once notice was provided to the insurer of the claim, the number ********** was assigned to Galko's claim to acknowledge receipt of the same. The Harleysville adjuster's notes made under the initial claim report indicated that the insured, Galko, was involved in an accident with a vehicle she purchased in July 1999 that did not appear on the policy declarations sheet. Also, the adjuster notes indicated that the insured no longer owned the 1985 Buick LeSabre listed on the policy declarations sheet. (See plaintiff's exhibit B to motion for summary judgment.) On May 3, 2000, an entry was made in the insurance claim log that assigned the claim to Angela Steen. Nine days later, Ms. Steen sent a letter to the plaintiff denying her coverage including first-party personal injury benefits under the policy based upon exclusion a(5)(b). The letter stated:

"We do not provide first-party benefits coverage for 'bodily injury' sustained by an 'insured' who at the time of the accident is 'occupying' a 'motor vehicle' owned by the insured for which a financial responsibility required by the Act is not in effect." (Plaintiff's exhibit C attached to motion for summary judgment.)

___

of Policy Provisions—Pennsylvania endorsement of the policy in the definition section, it provides that "your covered auto" includes one that has been acquired during the policy period, and the company has been notified of the acquisition of the vehicles within 30 days of the change as stated in the policy. An insured need not report the replacement vehicle to the insurer if additional coverage is not required. (Defendant's exhibit B, Amendment of Policy Provisions, section A.)

Two years later, on April 5, 2002, the plaintiff was joined as an additional defendant by Thomas Vadella, an original defendant to the third-party lawsuit. Vadella was the driver of the Chevy truck involved in the accident that occurred on April 24, 2000, and originally sued by Janice Cobb, an occupant of Jennifer Galko's car. Harleysville Insurance Company was soon notified of the lawsuit filed joining Jennifer Galko as an additional defendant. (See plaintiff's exhibit D attached to its motion for summary judgment.) Gail Parker was employed as a litigation specialist by Harleysville Insurance Company and, on April 24, 2002, she had been assigned the third-party claim asserted against the plaintiff herein. By letters dated April 24, 2002 and May 1, 2002, Ms. Parker notified Jennifer Galko that coverage involving the collision of her 1996 Chevrolet would be denied as would a defense in the litigation. Ms. Galko was advised that she personally would be responsible for her own defense involving any pending litigation. (See plaintiff's exhibits D and K.) The plaintiff consequently hired counsel to defend her in the underlying civil action. Subsequently thereto, the plaintiff filed the instant action on May 17, 2002, against Harleysville Insurance Company, a/k/a Pennland Insurance and Harleysville Insurance Companies. After Ms. Galko's complaint was filed, the defendants requested information from the plaintiff regarding the ownership of the 1985 Buick LeSabre. Thereupon, the plaintiff provided information indicating that the vehicle had been traded in July 1999. (See plaintiff's brief p. 4.)

Two years after the trade-in on May 17, 2002, the defendant received documentation verifying the trade-in of the 1985 Buick LeSabre from the plaintiff. On May 30, 2002, pursuant to counsel's advice, Harleysville In-

surance Co. extended full coverage under the policy to Ms. Galko, including personal injury coverage and liability coverage including a defense in the pending third-party claim. Discovery has since been completed.

Presently, both parties before this court ask that summary judgment be granted in their favor. Before we discuss the specific issues presented by the parties' motions, let us first lay the groundwork for the summary judgment standard.

### Summary Judgment Standard

As we have set forth in *Conway v. Tink's Spearmint Café Inc.,* 01 CIV 6105 (Lacka. Cty. (Judge Minora) August 13, 2004), summary judgment is appropriate only in those cases where the record demonstrates that there is no genuine issue of any essential facts and that the moving party is entitled to judgment as a matter of law. *Bird Hill Farms Inc. v. United States Cargo & Courier Service Inc.,* 845 A.2d 900, 903 (Pa. Super. 2004). In making that determination, the record must be viewed "in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Phillips v. Cricket Lighters,* 576 Pa. 644, 841 A.2d 1000, 1004 (2003). Therefore, summary judgment may be entered only "[w]hen the facts are so clear that reasonable minds cannot differ," *Duquesne Light Co. v. Pennsylvania American Water Co.,* 850 A.2d 701, 703 (Pa. Super. 2004), and it is "free from doubt the moving party is entitled to judgment as a matter of law." *Savage, Sharkey, Reiser & Szulborski Eye Care Consultants v. Tanner,* 848 A.2d 150, 153 (Pa. Super. 2004); *William O'Brien v. Ohio*

*Casualty Ins. Co.,* 105 Lacka. Jur. 60, 62-63 (2004). Let us now turn to the issues presented by both parties' motions for summary judgment. We will first consider the plaintiff as the moving party.

In the plaintiff's complaint she has asserted claims of bad faith, breach of contract and denial of liability coverage against the defendant. Here she moves for partial summary judgment on the bad faith count alone. The issue that must be resolved at this juncture is whether the defendant, Harleysville Insurance Company, acted with bad faith toward the plaintiff given the evidence supplied by the parties.

" '[B]ad faith' toward the insured normally involves the handling of a claim or denial of benefits." *Chau v. RCA Ins. Group,* 2004 WL 594064 (Pa. Com. Pl.), citing *Adamski v. Allstate Insurance Co.,* 738 A.2d 1033 (Pa. Super. 1999). Should an insurer violate the Unfair Insurance Practices Act, it may be found liable for bad faith conduct. *O'Donnell ex rel. Mitro v. Allstate Insurance Co.,* 734 A.2d 901, 906 (Pa. Super. 1999). Several courts of this Commonwealth have recognized that there is no common-law remedy in this state for bad faith on the part of insurers. *Terletsky v. Prudential Property and Casualty Insurance Co.,* 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (1994); *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981). The Pennsylvania Legislature has instead created a statutory remedy in 42 Pa.C.S. §8371 which provides that:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer."

Numerous Pennsylvania courts have also revealed that "bad faith" denotes a particular connotation in the insurance arena as defined in Black's Law Dictionary 139 (6th ed. 1990):

"*Insurance.* 'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." See *Adamski v. Allstate Insurance Co.,* 738 A.2d 1033, 1036 (Pa. Super. 1999); *Terletsky v. Prudential Property and Casualty Insurance Co.,* 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (1994).

The Pennsylvania Superior Court established a two-prong test whereby the plaintiff must prove the following by clear and convincing evidence to establish a claim of bad faith against the defendant: (1) the insurer did not have a reasonable basis to deny benefits under the policy; and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis. *Terletsky v. Prudential Property and Casualty Insurance Co.,* 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (1994). Additionally, when an insurer acts with disregard or indifference to the rights

of the insured, such actions may constitute bad faith. *Polselli v. Nationwide Mutual Fire Insurance Co.,* 23 F.3d 747, 751 (3d Cir. 1994). Yet, we must keep in mind that mere negligence or bad judgment alone does not constitute bad faith. *Adamski v. Allstate Insurance Co.,* 738 A.2d 1033 (Pa. Super. 1999).

This court has previously confirmed in *McAndrew v. Donegal Mutual Insurance Co.,* 99 CIV 1761 (Lacka. Cty. (Judge Geroulo) January 8, 2003), that an insurance company acts in bad faith against an insured when it fails to carry out a complete investigation. The Superior Court of Pennsylvania agreed with this contention when it declared that bad faith comprises a "lack of [a] good faith investigation into [the] fact[s], and failure to communicate with the claimant." *Brown v. Progressive Insurance Co.,* 860 A.2d 493, 501 (Pa. Super. 2004), citing *Romano v. Nationwide Mutual Fire Insurance Co.,* 435 Pa. Super. 545, 554, 646 A.2d 1228, 1232 (1994).

Here the plaintiff asserts that Harleysville's initial denial of first-party benefits and the refusal to provide a defense and indemnification in the third-party case constitutes bad faith on the part of Harleysville Insurance. As noted above in our definition of bad faith, the burden is on the plaintiff to prove with clear and convincing evidence that Harleysville acted with a motive of ill will or dishonest purpose. This goal may be achieved by instituting the above two-prong test delineated by the *Terletsky* court and previously utilized by this court in *McAndrew, supra.*

The first prong of this test asks whether the insurer had a reasonable basis to deny the claim. A good starting point for this analysis requires us to review both the

method of investigation required by the insurer and the mode of investigation that was conducted by the insurance adjusters.

The Harleysville Claims Manual Medical Guidelines requires prompt contact with the insured person once a claim has been made.[2] The Harleysville Claims Manual Investigative Guidelines provides that the contact should be made by the insurer with the insured within 24 hours of the initial reporting of the claim. Here the claim was first reported on April 25, 2000, and not assigned to the adjuster, Ms. Steen, until eight days later on May 3, 2000.[3]

---

2. Plaintiff's exhibit "G": The Harleysville Claims Manual Medical Guidelines are set forth as follows:

"(1) Prompt contact with the insured person. Keep in mind that the accident is no small event in his life. If he wants to talk, be sure you want to listen and observe.

"(2) Note carefully the injuries he describes.

"(3) Obtain the names of the hospital and doctor. List medications or applications prescribed and/or purchased.

"(4) Find out the nature of the claimant's occupation, and the identity of the employer. If self-employed, ascertain the type of business he engages in and the location of operation.

"(5) When necessary, explain what steps you must perform to bring his claim to satisfactory disposition.

"(6) Obtain authorization to secure medical reports and/or wage information.

"(7) Acquaint yourself with the type of injury sustained, treatment thereof, normal end results and the time required for maximum recovery.

"(8) Offices with access to cost containment specialist should utilize their expertise to review medical bills, reports and test results. (This applies to first-party cases only.)

"(9) Carefully monitor the claimant's progress, note any complications, and re-evaluate the claim when necessary."

3. Ms. Steen reportedly wore many hats. From early 2000, Ms. Steen moved to the Norristown facility, where she began processing 200 suffixes, which are claims with potential exposure, and increased

Ms. Steen provided testimony wherein she recalled reading in the original report that Galko no longer owned the 1985 Buick. In fact, the 1996 Chevrolet replaced the 1985 Buick. At no time did Ms. Steen obtain a recorded statement from the insured because, as she stated, it was not a standard practice. (Plaintiff's exhibit H, D.T. Steen pp. 32-33.) Yet, the Harleysville Claims Manual Investigative Guidelines provides guidance as to when a statement should be taken and it states:

"Statements shall be obtained from appropriate parties to include the insured, agent, witnesses, etc. Statements are required whenever there is a question of cause of origin of the loss, question of valuation of damaged property, or the potential for subrogation. Any question as to whether or not statements are required should be resolved in favor of the statement being taken. While statements are to be as concise as possible, the need for completeness and specificity should be emphasized. Adjusters must listen to the answers already given and formulate additional questions based upon the answers already presented by the person giving the statement." (See plaintiff's exhibit G.)

As previously noted, the guidelines provide that prompt contact be made with the customer, a collection of both medical data and some personal data be obtained and the adjusters take statements when necessary. None of these steps were taken. Plus, the language of the in-

---

her load to 350 claims without an increase in pay, hours or commission nor additional training aside from a one-day course on first-party benefits given by her supervisor at the Norristown location, and she also began to handle Pennsylvania claims. (See exhibit H, D.T. Steen pp. 17-20.)

surance contract states that replacement vehicles automatically acquire the same coverage as the vehicle it replaced. Notice need not be provided to the insurer unless the insured wishes to *add* or *continue* coverage for damage to your auto. (See plaintiff's exhibit I, Amendment of Policy Provisions §I(A)(2).) (emphasis added) Moreover, the most convincing evidence that confirms the insurer acted in bad faith involves Mr. Walters' deposition testimony and e-mail he sent to a company litigation manager soon after Ms. Galko instituted the present action. Mr. Walters was employed by Harleysville for over 21 years when he provided his deposition testimony. His position was a home office claim division specialist. (See plaintiff's exhibit E, D.T. Walters p. 5.) In his deposition, Mr. Walters stated that he had written an e-mail on May 29, 2002, and sent it to Valerie Wujcik, a general liability and litigation manager. The e-mail sent by Mr. Walters stated the following:

"Val: As we discussed, it appears that we incorrectly denied FPB (first-party benefits) coverage as well as a defense to the tort claim being brought against the insured. The file reflects the insured purchased a 1996 Chev Cavalier in July 1999. This vehicle apparently REPLACED the 1985 Buick that was on the policy. We did not thoroughly investigate this initially which lead to a premature denial of coverage. We appear to have based the denial on coverage (initially for FPB meds) based upon the belief that the 1996 vehicle was purchased in addition to the 1985 vehicle. Subsequently the insured's attorney provided us with verification that the vehicle was traded in. The policy does not require that the insured advise us of a change in vehicle on the policy if it is a replacement vehicle and not seeking COLL (colli-

sion), comp (comprehensive) coverage. Therefore, if we have proof of the insured trading in the 1985, then the 1996 was a replacement and we owe the insured coverage." (See plaintiff's exhibit F.)

After reviewing the record, it is apparent that the insurer neglected to provide a good faith investigation. The protocol provided in the claims manual guidelines was blatantly ignored, as was the language in the insurance contract. Given the lack of an investigation and ignorance of the policy language, the insurer did not have a reasonable basis for denying the benefits under the policy. As it turns out, the insurer had every reason to provide the policy benefits to Ms. Galko. Therefore, the first prong of our analysis is satisfied.

The second factor the plaintiff must prove by clear and convincing evidence is that the insurer knew of and recklessly disregarded the lack of a reasonable basis for denying the insured's claim. In reviewing the record while considering the second prong of the analysis a possible redeeming factor comes to light. Ms. Steen, the insurance adjuster, had contacted outside counsel, Scott Tredwell, on the date that the claim was assigned to her. Yet there is no indication that she informed Mr. Tredwell as to the nature of the acquisition or that the 1996 Chevy Cavalier was a replacement vehicle. Moreover, Ms. Steen stated in her deposition testimony that it was of no consequence to her at the time she was reviewing Ms. Galko's claim if the plaintiff in fact still owned the 1985 Buick, or if she had gotten rid of it. (See plaintiff's exhibit G, D.T. Steen, p. 33.) Again, in her deposition, Ms. Steen replied that the insured had informed her that she traded in the 1985 Buick, but she never documented this information in the claim log. (Plaintiff's exhibit H, D.T. Steen

pp. 37-38.) Such treatment of the plaintiff's claim denotes mistreatment by the insurance company. Clearly, the insurer did know of the status of the 1996 Chevy, yet failed to properly document it, which initiated the improper denial of the plaintiff's claim and represents an apparent disregard by the insurer of its lack of a reasonable basis for denying the claim. Therefore, the second prong of the two-prong test has been met.

Conversely, the defendant asserts there is no genuine issue of material fact in regard to the bad faith claim. Harleysville insists that the plaintiff failed to prove the three elements required for a prima facie case of bad faith by clear and convincing evidence. Harleysville further asserts that it had a reasonable basis to deny insurance coverage for Galko's 1996 Chevrolet because the insurer was not provided notice during the policy period of the acquisition of the new vehicle. Moreover, the defendant contends that the delay in coverage was caused by outside factors, including the plaintiff's actions and inactions and not the bad faith of the company. We disagree.

It is not disputed that Galko did not inform her insurer that she had traded in her 1985 Buick LeSabre and was then driving the 1996 Chevrolet until April 25, 2000. Harleysville contends that it denied coverage because the adjuster believed the Chevy to be an additional vehicle owned by the insured. Even if this was true, this argument has no merit. According to the language in the insurance contract, even if the Chevy was an additional vehicle acquired by the insured, it should have been extended coverage as a "covered auto."[4]

---

4. The Amendment of Policy Provisions §1. Definitions states: If the vehicle you acquire is *in addition* to any shown on the declara-

Harleysville further contends that the insurance policy period had expired at the time of the reported accident which therefore extinguished any responsibility the insurer would have had over the insured in regard to a replacement vehicle. We do not find this argument compelling. The insurance policy states that a "covered auto" includes a vehicle, on the date the insured becomes the owner, which is acquired during the policy period and which the insured asked the insurer to insure within 30 days after its acquisition. (See Amendment of Policy Provisions—Definitions.) This same definition further states that if the newly acquired vehicle replaces the one in the declarations, it will have the same coverage as the vehicle replaced. *Id.* Thirty-day notice of newly required replacement vehicles is only necessary if additional coverage is requested. *Id.* Harleysville interprets the language of the insurance policy to mean that notice of newly acquired vehicles must be given to the insurer, whether or not replacement vehicles, within the policy period the vehicle was acquired. By this, the defendant means that because the plaintiff acquired the 1996 Chevy in July of 1999 and the next policy renewal period began in August of 1999, the plaintiff therefore failed to notify the insurer of her acquisition of a new vehicle during the policy period in which it was acquired. This is a bogus interpretation. Pennsylvania courts have given deference in the ambiguities of insurance contract contrivance and interpretation in favor of the insured if the terms are capable of more than one reasonable interpretation. See *Estate of Higgins v. Washington Mutual Fire Insurance*

---

tions, it will have the broadest coverage we now provide for any vehicle shown in the declarations. (emphasis added)

*Co. of Lawrence County, PA,* 838 A.2d 778 (Pa. Super. 2003); *Wagner v. Erie Insurance Co.,* 801 A.2d 1226 (Pa. Super. 2002); *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983) (The interpretation of an insurance contract is a question of law, not a question of fact that can be decided by the court rather than the jury.). The defendant would like this court to read the policy to mean that each renewal period constitutes a separate policy/contract. We refuse to adopt this interpretation. Logic dictates that as long as the same policy number and the same coverage remain constant, the same policy remains in effect. The Superior Court asserted in *Yoder v. American Travellers Life Insurance Co.,* 814 A.2d 229 (Pa. Super. 2002), that the renewal of an insurance policy cannot be viewed as the formation of a new contract upon each renewal period because the parties have not made a new offer or acceptance. Here, Galko initiated insurance coverage under contract with Harleysville in August of 1998, and by continued paying of her insurance premiums each month, she continued keeping the same insurance policy current and in place. All the while, the insurer accepted these same checks as well.

We are satisfied that the plaintiff has fulfilled her burden and has established both prongs of the test by clear and convincing evidence to substantiate a claim of bad faith against the defendant. The defendant has failed to illustrate that any genuine issue of material fact exists. Therefore this court shall grant the plaintiff's motion for partial summary judgment on the issue of bad faith.

The defendant has filed its own motion for summary judgment requesting that this court dismiss all three counts of the plaintiff's complaint, including the bad faith

claim, breach of contract claim and the denial of liability claim. At this time, the defendant's motion for summary judgment as to the bad faith issue is denied as per our conclusion above which renders it moot. We shall now consider the additional issues presented by the defendant's motion for summary judgment below.

The defendant asserts that the action under contract should be dismissed because the insurer has paid the first-party benefits according to the insurance contract and, second, that there is no issue of material fact. The policy issued by the defendants provided first-party benefits coverage of the insured, Jennifer Galko.[5] The plaintiff contends that Harleysville's failure to honor her first-party benefit claim is a breach of the insurance contract.

The following segment of this discussion centers on contract law and what constitutes a breach of contract for insurance coverage which is significantly different from a section 8371 bad faith action as discussed above. *Ash v. Continental Insurance Co.,* 64 D.&C.4th 37, 41 (Lawrence Cty. 2003). In a bad faith action, the insurer may be found liable for damages beyond the contract language. *Id.* at 41. In an action arising out of a breach of

---

5. The language of the insurance policy within the first-party provisions states the following:

"We will pay, in accordance with the Act, the basic first-party benefit to or for an 'insured' who sustains 'bodily injury.' The 'bodily injury' must be caused by an accident arising out of the maintenance or use of a 'motor vehicle.'" The language of the policy continues to explain that limits are contained in the declarations or schedule. The basic first-party benefit consists of reasonable medical expenses including care, recovery or rehabilitation and will be paid if incurred within the first 18 months following the accident. See First-Party Benefits Coverage—Pennsylvania §2 "First-party benefit coverage insuring agreement."

contract, the insurer may be liable only under the terms of the contract. The prima facie case that must be established in a breach of contract action includes three elements: (1) the existence of the contract, including its essential terms, (2) a breach of duty imposed by the contract and (3) resultant damages. Accordingly, it is undisputed that the insurance policy issued to Ms. Galko by Harleysville Insurance Co. was in effect during the course of events in question. The Pennsylvania Superior Court has established that an insurance policy constitutes a contract. *Smith v. CNA Insurance,* 319 Pa. Super. 449, 466 A.2d 629 (1983). In accord with the second element stated above, there must be a duty imposed by the contract that has been breached by one party to that contract to establish a claim in breach of contract. "The essential issue that must be determined is whether Harleysville has breached its duty under contract with the insured. Under the First-Party Benefits Coverage Insuring Agreement, the basic first-party benefit coverage includes payments, including reasonable and necessary medical expenses, for the insured who sustained bodily injury as a result of the maintenance or use of a motor vehicle. Although the insurer initially denied the first-party benefits under the insuring agreement to Ms. Galko, it did eventually make payment for her medical expenses on May 30, 2002. Therefore, Harleysville did not breach its duty under the policy, but performed its obligation under the insuring agreement, albeit two years after the insurance claim was made. (See defendant's exhibit F in its motion for summary judgment, p. 41.) Consequently, the plaintiff has failed to prove damages that resulted from the insurer's alleged breach of contract. The only damages that the plaintiff asserted in relation to the breach

of contract claim were her unpaid medical bills which have been made current as of May 30, 2002. As a result, the plaintiff has failed to establish two of the three necessary elements required in a prima facie case of breach of contract since the plaintiff's medical expenses have been paid and the plaintiff has not suffered any damages as alleged. As current case law states, summary judgment is proper when the evidentiary record contains insufficient facts to establish a prima facie cause of action presenting no issue to submit to a jury. *Rabutino v. Freedom State Realty Co. Inc.,* 809 A.2d 933 (Pa. Super. 2002). It is only proper for this court to grant the defendant's motion for summary judgment on the breach of contract claim.

The last issue that we are presented with is whether a genuine issue of material fact exists within the plaintiff's claim for denial of liability coverage by the insurer. A denial of liability coverage claim can be handled in one of two ways: first, it may be dealt with as a breach of contract claim in that the insurer had promised to provide coverage within the terms of the insurance policy, but instead it denied coverage. The second approach to a denial of liability claim is to manage it as a bad faith claim. In order to know which approach to take in analyzing this sort of cause of action, the court must examine how the allegations are presented in the complaint. Here the plaintiff asserts that, upon receipt of notice by the insurer of the third-party lawsuit, Harleysville was obligated to provide a defense in the lawsuit and provide coverage for the damages sustained by Ms. Galko. The plaintiff complains that such failure to provide a defense and affirm coverage constitutes a breach of the contract/ insurance policy. (See plaintiff's complaint ¶35.) Yet, the

defendant, Harleysville, did extend full coverage to the plaintiff under the policy including first-party and liability coverage, on May 30, 2002. Clearly, the plaintiff's assertion of the denial of benefits claim is akin to its breach of contract claim which has been duly examined and resolved above. There has been no additional issue presented to this court by the plaintiff's assertions in Count III, denial of liability coverage. Therefore this court must grant the defendant's motion for summary judgment on the denial of liability claim. A comprehensive order consistent with this memorandum follows.

## ORDER

And now, to wit, January 18, 2005, upon consideration of both plaintiff's and defendant's motions for summary judgment, the verbal and written arguments of counsel and in accordance with the preceding memorandum, it is hereby ordered and decreed that the plaintiff's motion for partial summary judgment will be granted.

The defendant's motion for summary judgment will be granted in part and denied in part.

(1) The defendant's motion for summary judgment as to Count I of the complaint, bad faith is denied.

(2) The defendant's motion for summary judgment as to Count II of the complaint, breach of contract is granted.

(3) The defendant's motion for summary judgment as to Count III of the complaint, denial of liability coverage is granted.