## DeShong v. State Farm
## Life Insurance Company

C.P. of Fulton County, no. 49 of 2003-C.

*Karl R. Hildabrand,* for plaintiff.
*Daniel L. Rivetti,* for defendant.

VAN HORN, *J.,* March 18, 2005—

## BACKGROUND OF THE CASE

### *Introduction*

This case comes before the court from oral argument upon plaintiff's, Melissa DeShong's, petition to compel discovery responses from defendant and defendant's,

State Farm's, answer to plaintiff's petition to compel discovery responses. Plaintiff's petition is in response to defendant's refusal to produce defendant's entire Life Claims Process Guide,[1] along with the documents generated by defendant concerning its decision to pay benefits to plaintiff in this case.[2] Plaintiff alleges that the requested discovery is relevant, as it "will provide the basis for defendant's denial of the payment of the policy's proceeds and show whether or not defendant followed its own procedure in determining whether to pay the policy's proceeds."[3] Additionally, plaintiff alleges the requested discovery "may show defendant's bad faith in failing to investigate plaintiff's claim before denying payment of the policy's proceeds."[4] Defendant counters plaintiff's allegations by asserting that the requested documents "have no bearing on the issues presented in this case."[5] Defendant further asserts its position by indicating that plaintiff has not put forth a claim for bad faith in its complaint.[6]

## Facts

In February of 2002, Andrew Boyd DeShong, plaintiff's husband, and defendant entered into a contract for life insurance for which a policy was issued.[7] On June 20, 2002, Mr. DeShong and plaintiff were re-

---

1. Petition p. 1 ¶6 (December 3, 2004).
2. Petition p. 2 ¶8 (December 3, 2004).
3. Petition p. 3 ¶12 (December 3, 2004).
4. Petition p. 3 ¶13 (December 3, 2004).
5. Answer p. 2 ¶¶12 and 13 (December 27, 2004).
6. Answer p. 2 ¶13 (December 27, 2004).
7. The parties disagree as to the actual date of the policy, but both agree that it was issued in February of 2002. The disagreement as to the actual date has no bearing on the case.

turning home from an outing. The couple argued in the car during the ride home.[8] Upon arriving home, Mr. DeShong placed his wedding ring on the stove and went to the basement. He called for plaintiff to come to the basement, but she did not respond because she was on the telephone. Later, when plaintiff went to the basement in search of her husband, she found him hanging by a dog chain tied to a ceiling beam.

Plaintiff insists that Mr. DeShong's death was the result of an accident rather than from suicide. Plaintiff alleges certain facts to support her belief. For instance, plaintiff states that Mr. DeShong had a history of threatening harm to himself in an attempt to gain attention and sympathy from plaintiff. Once receiving the desired attention, he abandoned any threatened suicide attempts. Additionally, plaintiff claims that Mr. DeShong was six feet two inches tall and the ceiling beam only five feet eight inches from the floor, making suicide by hanging impractical.

Plaintiff submitted a claim to defendant for the basic plan benefit of $300,000 under Mr. DeShong's policy. Defendant responded by paying the limited death penalty benefit under the policy, which amounted to premiums paid by the insured less dividends.[9] Defendant's reason for paying the limited death benefit is based on its conclusion that Mr. DeShong's death was the result of suicide rather than from an accident.

---

8. It is agreed that Mr. DeShong had been drinking alcohol during the outing, but the parties disagree as to the exact amount.

9. As of the date of the filing of plaintiff's complaint, no decision had been made by defendants regarding the payment of plaintiff's claim.

## Procedural History

On March 6, 2003, plaintiff filed her complaint alleging breach of contract from defendant's failure or refusal to pay life insurance benefits under Mr. DeShong's life insurance policy. On May 2, 2003, defendant filed its answer and new matter to plaintiff's complaint alleging that plaintiff's recovery was limited to the premiums paid on the policy less any dividends received by Mr. De-Shong, as his death was the result of suicide. On May 15, 2003, plaintiff responded to defendant's new matter specifically denying defendant's averments.

Subsequent to the initial pleadings, the parties engaged in a lengthy process of discovery. Defendant sought production of documents and things for discovery pursuant to Pa.R.C.P. 4009.22 from the Pennsylvania State Police and the office of the Fulton County Coroner on May 14, 2003, and June 20, 2003, respectively. Plaintiff conducted a deposition of defendant's employee, Mary Aloy, on October 30, 2003.[10] On August 23, 2004, plaintiff served on defendant plaintiff's second request for production of documents.[11] Plaintiff filed on December 3, 2004, plaintiff's petition to compel discovery responses from defendant. The court responded with a rule requiring defendant to answer said petition within 20 days. Defendant responded with defendant's answer to plaintiff's petition to compel discovery responses and defendant's

---

10. It is during this deposition that plaintiff claims to have made the first request for discovery of the documents that are the subject of this opinion.

11. Defendant did not answer plaintiff's second request within 30 days as required pursuant to Pa.R.C.P. 4009.12. However, plaintiff did not motion for sanctions pursuant to Pa.R.C.P. 4019(a)(1)(vii).

responses to plaintiff's second request for production of documents on December 27, 2004. The court responded by order of court dated January 5, 2005, ordering that oral argument be held on plaintiff's petition on February 15, 2005. This matter is now ripe for decision.

## DISCUSSION

The underlying issue in this case is whether or not Mr. DeShong's death was, in fact, the result of a suicide, thereby requiring defendant to only pay the limited death benefit under the life insurance policy. Plaintiff argues in her petition that the documents requested[12] are relevant to this issue because they will (1) provide the basis for defendant's conclusions, (2) indicate whether defendant followed its recommended procedures in reaching its conclusions, and (3) indicate whether defendant exercised bad faith in following its recommended procedures.[13] For purposes of this discussion, the court addresses plaintiff's first two arguments simultaneously as they are closely related, and then addresses the issue of bad faith.

---

12. Plaintiff's petition requests defendant's Life Claims Process Guide as well as defendant's documentation explaining its decision to not pay the basic plan benefit. At oral argument, plaintiff indicated that defendant's employee, Nancy Boden, was scheduled to be deposed two weeks from the date of oral argument. Ms. Boden is the person responsible for defendant's decision to only pay the limited death benefit in this case, and it was her documentation that was the subject of plaintiff's petition. As plaintiff did not address Ms. Boden's documentation at oral argument, and as Ms. Boden was due to be deposed by defendant, the court will limit its discussion only to the discoverability of defendant's Life Claims Process Guide.

13. Petition p. 3 ¶¶12 and 13 (December 3, 2004).

*Whether the requested discovery is relevant to provide the basis of defendant's conclusions and to indicate whether defendant followed the recommended procedure in reaching its conclusions?*

Plaintiff made an initial request for the subject documentation during the deposition of defendant's employee, Mary Aloy. [n.10.] Plaintiff then proceeded to make a second request pursuant to Pa.R.C.P. 4009.1 and in accordance with the procedures outlined in Pa.R.C.P. 4009.11. Defendant eventually responded to plaintiff's request by submitting a copy of the table of contents to the Life Claims Process Guide along with the Life Claims Investigation Manual, investigations section, and suicide claims chapter. Defendant objects to the production of the entire Life Claims Process Guide on the assertion that the information sought is irrelevant to the issues presented in this case. [n.5.] The court agrees and denies plaintiff's request on the basis of relevancy.

Pa.R.C.P 4003.1 governs the scope of allowable discovery by stating:

"*Rule 4003.1. Scope of discovery generally. Opinions and contentions.*

"(a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

"(b) It is not ground for objection that the information will not be admissible at the trial if the information sought

appears reasonably calculated to lead to the discovery of admissible evidence.

"(c) Except as otherwise provided by these rules, it is not ground for objection that the information sought involves an opinion or contention that relates to a fact or the application of law to fact."

The general subject matter involved in this action is the contractual agreement entered into between Mr. DeShong and defendant in the manner of the life insurance policy issued by defendant to Mr. DeShong in February of 2002. Plaintiff's allegation that defendant breached this contract by failing to pay the basic life benefit at the time of filing of the complaint could be said to implicate the terms of the policy addressing payment of the basic plan amount.[14] Defendant's subsequent decision to pay the limited death penalty under the policy, while not rendering plaintiff's complaint moot, has the effect of implicating the limited death penalty term of the policy as the specific subject matter involved in this pending action. The limited death penalty term provides:

"*Limited death benefits.* If the insured dies by suicide while sane or by self-destruction while insane within two years from the issue date of the policy, the basic plan amount will not be paid. The proceeds in this case will be limited to the premiums paid on the basic plan less any dividends paid on the basic plan. Each rider has its own limited death benefit provision." [15]

It is undisputed that Mr. DeShong died within two years of the issue date of the policy. It is undisputed that defendant made payment to plaintiff in accordance with

14. Complaint ¶4 (March 6, 2003).
15. Answer and new matter p. 3 ¶12 (May 2, 2003).

the limited death penalty benefits term of the policy. The only question is whether the facts indicate that Mr. DeShong's death was from suicide rather than from accidental and unintentional means.[16]

Plaintiff's complaint alleges breach of contract for defendant's failure to pay the basic plan amount upon Mr. DeShong's death. The complaint does not allege that defendant was negligent or otherwise remiss in following its claims-processing procedures and protocols when handling plaintiff's claim. For this reason, the court fails to understand how discovery of defendant's entire Life Claims Process Guide, which contains 44 sections pertaining to the handling of life insurance claims, could have a bearing on the basic facts surrounding the true nature of Mr. DeShong's death.

Defendant's counsel stated at oral argument that defendant's conclusions in this case were based solely on information obtained in reports offered by the Pennsylvania State Police and the Fulton County Coroner. Defendant's employee, Mary Aloy, in her answer to plaintiff's interrogatories confirmed that during her investigation she received information from the Pennsylvania State Police, the Fulton County Coroner, plaintiff (by way of plaintiff's counsel), and Yonnie Reed (Mr. DeShong's State Farm agent).[17] Ms. Aloy stated that the information gathered by her and included in the DeShong file was forwarded to Nancy Boden whom Ms. Aloy believes made the final determination in this case.[18] As Ms. Boden was scheduled for deposition in the weeks following oral argument, the court is confident that any

16. Complaint ¶6 (March 6, 2003).
17. Deposition of Mary Aloy, 34:1-25 (October 30, 2003).
18. Deposition of Mary Aloy, 18:18-21:15 (October 30, 2003).

information regarding her ultimate conclusions and decision-making methodology would be readily available to plaintiff through this discovery process. The court is convinced that the information that formed the basis of defendant's conclusions is readily available to, or otherwise in the possession of, plaintiff, and could not be further augmented by allowing plaintiff to delve into defendant's Life Claims Process Guide.

The production of the entire Life Claims Process Guide is found to be even less relevant to the subject matter of this case because defendant has already produced the Life Claims Investigation Manual pertaining to the investigation of suicide claims. The chapter on suicide claims includes a section outlining suicide investigation. The section directs that all available facts pertaining to the cause of death must be obtained. The section indicates that police and coroner reports are two of the best sources of information in a suicide investigation. The section states that defendant may reach a contrary conclusion to that indicated in the death certificate, and clear evidence would be necessary to support such a conclusion.

Here, the court finds that the suicide claims section supports defendant's contention that it relied on the police and coroner reports in making its determination. The chapter outlines suggested procedures when dealing with contested claims or conclusions that run counter to official findings. Any relevant information concerning defendant's recommended procedures concerning suicide investigation can be obtained or reasonably implied from reading this chapter. The court concludes that discovery of the portions of the Life Claims Process Guide not relevant to the subject matter of the pending claim would not lead to the procurement of admissible evidence. There-

fore, plaintiff's inquiry falls outside of the scope of allowable discovery pursuant to Pa. R.C.P. 4003.1.

*Whether the requested discovery is necessary to indicate if defendant exercised bad faith in following its recommended procedures?*

Plaintiff next argues that discovery of defendant's entire Life Claims Process Guide may indicate that defendant exercised bad faith in making its determination that plaintiff was due the limited life benefit under Mr. DeShong's life insurance policy. The court rejects this argument for the simple reason that plaintiff has not pled a cause of action alleging bad faith.

Actions involving alleged bad faith under an insurance policy are controlled by statute. 42 Pa.C.S. §8371 states:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer."

Pennsylvania law defines bad faith on the part of insurance carriers as "any frivolous or unfounded refusal to pay proceeds of [a] policy." *Adamski v. Allstate Insurance Company,* 738 A.2d 1033, 1036 (Pa. Super. 1999). The Superior Court advanced a two-part test to determine bad faith, which requires the alleger to prove by clear and convincing evidence that: "(1) the insurer lacked a reasonable basis for denying coverage; and (2) the in-

surer knew or recklessly disregarded its lack of a reasonable basis." *Id.* citing *Terletsky v. Prudential Property & Casualty Insurance Co.,* 437 Pa. Super. 108, 649 A.2d 680 (1994).

As stated above, plaintiff's complaint does not implicate defendant's handling of plaintiff's claim, nor does it allege that defendant lacked a reasonable basis for determining that the limited life benefit was the appropriate payment in this case. Plaintiff's complaint only alleges breach of contract for failure to pay the basic plan amount under the policy. The court reasons that a bad faith claim in this case would arise from the same transaction as a claim for breach of contract. As such, plaintiff could have joined an action for bad faith with the action for breach of contract in the complaint pursuant to Pa.R.C.P. 1020(d), which states:

"(d) If a transaction or occurrence gives rise to more than one cause of action heretofore asserted in assumpsit and trespass, against the same person, including causes of action in the alternative, they shall be joined in separate counts in the action against any such person. Failure to join a cause of action as required by this subdivision shall be deemed a waiver of that cause of action as against all parties to the action."

As plaintiff's complaint does not raise a bad faith cause of action nor was it amended to include a bad faith cause of action even after defendant paid the limited life benefit on the conclusion that Mr. DeShong committed suicide, the court will not now permit discovery for the purpose of proving a cause of action not brought and consequently waived. The court concludes that discovery of the entire Life Claims Process Guide is not permitted for the purpose of proving bad faith.

## CONCLUSION

Based on the court's determination that the contents of defendant's entire Life Claims Process Guide fall outside of the scope of Pa.R.C.P. 4003.1 as not relevant to the subject matter involved in the pending action, and as the contents of said Guide might not be discovered for the purpose of proving a cause of action not raised and, therefore, waived pursuant to Pa.R.C.P. 1020(d), plaintiff's discovery request is denied.

## ORDER

And now March 18, 2005, having considered plaintiff's petition to compel discovery responses and defendant's answer to plaintiff's petition to compel discovery responses and the parties' oral argument in this matter, it is hereby ordered that plaintiff's petition to compel discovery responses is denied.