520 A.2d 485

George BARR, Individually as the Assignee of Charles L. Kershner, J.C. Ayers and Co. and Its Successor, J.C. Ayers, Inc., Charles L. Kershner, Individually and on Behalf of J.C. Ayers Co. and Its Successor, J.C. Ayers, and Co. and Its Successor, J.C. Ayers, Inc.

v.

GENERAL ACCIDENT GROUP INSURANCE COMPANY OF NORTH AMERICA and Its Successor, Cigna Corp., George Cramer, Individually and trading as Boyle and Cramer.

Appeal of George BARR, Individually and as Assignee of Charles L. Kershner, J.C. Ayers and Co. and Its Successor, J.C. Ayers, Inc.

Superior Court of Pennsylvania.

Argued Nov. 19, 1986.

Filed Jan. 28, 1987.

336

Richard A. Stanko, Media, for appellants.

Robert B. Mulhern, Jr. and Michael O. Kassak, Philadelphia, for Boyle, appellee.

Before CAVANAUGH, OLSZEWSKI and TAMILIA, JJ.

TAMILIA, Judge:

On July 18, 1979, appellant/Barr, while in the course of his employment, severed his hand on a paper cutting machine. A sheet metal guard for the machine had been manufactured and installed by J.C. Ayers and Company in 1973.

At the time of installation, Ayers had liability coverage including "Complete Operation" coverage with Insurance Company of North America. In 1975, Ayers' insurance coverage was transferred by George Cramer, a licensed insurance agent, to General Accident Group.

When appellant instituted an action against Ayers in 1980, the company notified Cramer, who submitted the claim to General Accident Group. The insurance company undertook Ayers' defense subject to a reservation of rights and, in October of 1982, denied coverage on the basis that the policy did not include "Complete Operations" coverage. The insurance company asserted it had never been requested to provide such coverage and had not charged for such.

In May 1983, Barr entered into an agreement with Ayers whereby Barr would hold Ayers free from any liability, for

the settlement amount of $250,000. Ayers did not admit liability or fault and Barr further agreed to seek recovery of the amount from the insurance companies and agents who had policies with Ayers. All of Ayers' rights against the insurance carriers were then assigned to Barr who brought suit individually and, as an assignee of Ayers against General Accident and Cramer, alleging a failure to obtain proper insurance coverage for Ayers.[1]

On October 21, 1984, before the trial was to begin, appellee/Cramer presented a motion in limine asserting that the court should find the assignment invalid or, if valid, only to the amount of any out-of-pocket defense costs incurred by Ayers. Appellee also sought judgment in his favor or, in the alternative, requested the court order that Barr prove his liability case against Ayers before proceeding against him.

Appellant requested a continuance of the trial date and on November 20, 1985, filed a petition to amend the complaint alleging a reformed settlement agreement. Under the terms of the new agreement, Barr entered judgment against Ayers for the $250,000 on November 14, 1985. He also agreed not to take any action to execute on the judgment but to seek satisfaction solely from any proceeds obtained from the insurance companies. In order for Barr to pursue these claims, Ayers assigned all of their rights to recover against their insurance companies and the insurance brokers, agents or representatives who were contracted to provide coverage.

The court denied the petition to amend, finding the effect of the new agreement was the same as the original in that Ayers was still insulated from liability and thus had no right to seek reimbursement for the judgment amount from the insurance companies. Concluding that the amendment would not advance Barr's position, the motion was denied. This appeal followed.

1. A hearing was conducted November 29, 1983 on the settlement agreement and the court held the amount was fair and reasonable.

Appellant makes two arguments on appeal. First, he maintains the Order is final and appealable because it puts him out of court on his claim. Second, he contends the settlement agreement was valid and the assignment by Ayers of its rights against Cramer and General Accident Group does not extinguish the claim against those parties.

Appellee/Cramer asserts the Order is not appealable and that the liability of Ayers to Barr must be proved prior to proceeding to the issues in this case. Appellee/Cramer also argues that the statute of limitations bars the amendment.

The resolution of the issues raised hinge on our determination of whether a plaintiff can agree to enter judgment against an insured and also agree not to enforce the judgment directly against the insured in exchange for the assignment of the insured's rights against his insurance company and their agents. We think such an agreement is valid and the assignee can seek recovery of the judgment amount in an action against the insurance company and their agents for failure to provide adequate coverage and failure to defend.

The lower court held that a contract for insurance is analagous to a contract for indemnification and since an indemnitee is not entitled to recover until he has made payment or suffered actual loss, the agreement in the present case resulted in Ayers, the indemnitee, being insulated from having to pay anything. Thus Barr, as assignee, had no right to recover the agreed damages.

We do not agree with the court's analysis. Although a contract for insurance is basically a contract of indemnity, contracts for indemnity are not contracts for insurance. *Brotherton Construction Co. v. Patterson-Emerson-Comstock*, 406 Pa. 400, 178 A.2d 696 (1962) citing *Pennsylvania R.R. Co. v. Roydhouse*, 267 Pa. 368, 110 A. 277. The principles applicable to enforcement of contracts of indemnification are not always appropriate when an insurance policy is at issue. A general liability insurance policy may require the insurer to defend when a showing of potential liability is made, whereas an indemnification clause may

come into play only when the insured has made a showing of an actual loss. It is particularly inappropriate to generally catagorize insurance policies as indemnity contracts and base a decision on application of indemnity rules when the issue appellant is attempting to litigate is the scope of the policy and the responsibility of the insurance company and its agents to provide proper coverage.

We believe the supplemental agreement entered into by the parties is valid and gives the assignee a right to seek recovery of the judgment amount from the insurance companies and their agents.

The basis of our decision is the court's ruling in *Gray v. Nationwide Insurance Co.*, 422 Pa. 500, 223 A.2d 8 (1966). In *Gray*, the appellant brought suit against an insured for personal injuries resulting from an auto accident. The insurance company undertook the defense and a $15,000 verdict was returned in Gray's favor. The insurer paid the entire policy coverage with interest and costs which amounted to $5,236.67. Gray then sought the balance from the insured party who assigned his rights against his insurance company to Gray with the agreement that regardless of the outcome, any obligation of the insured to Gray would be satisfied. Gray then brought suit as assignee against the insurer, claiming the company had refused to settle in good faith and seeking reimbursement for the entire amount of the judgment.

The court, in *Gray*, addressed the issue of whether or not the insured was required to pay to Gray the balance due on the judgment as a prerequisite to a cause of action against the insurance company and determined it was not. The court stated:

'Despite some conflict in earlier cases, the weight of authority is that it is not necessary for the insured to allege that he has paid or will pay a judgment in excess of the policy limits in an action against the insurer for breach of its duty to act in good faith. *Lee v. Nationwide Mut. Ins. Co.*, 286 F.2d 295 (4th Cir.). *Wessing v. American Indem. Co.*, D.C., 127 F.Supp. 775; *Alabama*

*Farm Bureau Mut. Cas. Ins. Co. v. Dalrymple,* [270 Ala. 119, 116 So.2d 924]; *Farmers Ins. Exch. v. Henderson,* 82 Ariz. 335, 313 P.2d 404; *Brown v. Guarantee Ins. Co.,* 155 Cal.App.2d 679, 319 Pa.2d 69, 66 A.L.R.2d 1202; *Henke v. Iowa Home Mut. Cas. Co.,* 250 Iowa 1123, 97 N.W.2d 168; *Southern Fire & Cas. Co. v. Norris,* supra [35 Tenn.App. 657, 250 S.W.2d 785]. See *Murray v. Mossman,* 56 Wash.2d 909, 355 P.2d 985.' *Jenkins v. General Accident Fire & Life Assurance Corporation,* [349] Mass. [699], 212 N.E.2d 464, 467 (1965). See also: *Burton v. State Farm Mutual Automobile Insurance Company,* 335 F.2d 317 (5th Cir.1964); *Sweeten v. National Mutual Insurance Company of D.C.,* 233 Md. 52, 194 A.2d 817 (1963). Three very sound reasons justify the adoption of this "non-payment" view: (1) such view prevents an insurer from benefiting from the impecuniousness of an insured who has a meritorious claim but cannot first pay the judgment imposed upon him; (2) such view negates the possibility that the insurer would be " * * * less responsive to its trust duties where the insured is able to pay the excess judgment. Were payment the rule, an insurer with an insolvent insured could unreasonably refuse to settle, for, at worst, it would only be liable for the amount specified by the policy. To permit this would be to impair the usefulness of insurance for the poor man." Note, 27 U.Pitt.L.Rev. 726, 728 (1966); (3) such view recognizes that the fact of entry of the judgment itself against the insured constitutes a real damage to him because of the potential harm to his credit rating; See, generally, Note, 27 U.Pitt.L.Rev. 726 (1966); Note, 60 Mich.L.Rev. 517 (1962); Keeton, *Liability Insurance and Responsibility for Settlement,* 67 Harv.L.Rev. 1136 (1954).

*Gray,* 422 Pa. at 505, 223 A.2d at 10.

The practice of assigning claims for bad faith refusal to settle is widespread and the view that such claims are assignable is accepted in a majority of jurisdictions. 12 A.L.R.3d 1158. A minority of states permit the injured

plaintiff to sue the insurer directly, without the benefit of an assignment for reasons of public policy. 63 A.L.R.3d 627.

Although *Gray* dealt with the assignment of rights based on a failure to settle, the reasons for allowing an assignment are equally applicable here where an insurer denies coverage and refuses to defend. The insured left to fend for himself should be able to negotiate a settlement which will protect his interests. If the injured party cannot acquire the right to bring suit against the insurer, he will not be willing to enter into such a settlement agreement. The injured party likewise would be hampered by a prepayment rule for as was stated in *Gray* if the insured is insolvent there would be no need for the insurance company to act, if the only cause of action available requires payment of a judgment before it is actionable. The injured party would thus be able to recover only from the insured and if the insured is insolvent, he would be unable to pay and would have little incentive to seek payment from the insurance company.

Further, support for our position is found in *Alfiero v. Berks Mutual Leasing Co.*, 347 Pa.Super. 86, 500 A.2d 169 (1985), where an excess coverage insurance carrier refused to defend and was ultimately sued by the injured plaintiff as assignee of the insured. In exchange for the assignment, the assignee agreed not to expose the assets of the insured to sale to satisfy the unpaid judgment.

The insurance company maintained that because the plaintiff agreed not to seek satisfaction from the insured, he has effectively been released from further liability. The court rejected this argument, finding that the plaintiff did not agree to release the insured from further liability but agreed to seek recovery of an agreed debt from a specific asset, i.e. the contractual rights owed to the insured by the insurer. *Alfiero, supra*, 347 Pa.Superior Ct. at 90, 500 A.2d at 171.

In *Alfiero*, a declaratory judgment was entered against the insurance company, as to the duty to defend, before the

settlement agreement was reached. Appellee/General Accident argues that the triggering event in *Alfiero* which permitted the negotiation of settlement was repudiation of coverage. They want to allow this, however, only where, as in *Alfiero*, the insurers responsibility to defend has already been determined prior to settlement. Under appellees theory, the insurer, absent a declaratory judgment, would be able to deny coverage and then insist that before the issue of whether such a denial is proper may be raised, the insured must have liability imposed, judgment entered and payment made to the plaintiff. We think the insured should be allowed, as soon as the insurer denies coverage, to protect its interest by negotiating a settlement. The only valuable asset the insured may have is its cause of action against the insurer and the insured should be able to assign this right to the injured party to protect itself from further liability.

We think the entry of judgment in the present case is also significant. The court, in *Gray*, recognized that entry of judgment constitutes a real harm because of the potential effect on the insured's credit rating. In addition, courts have cited factors such as damage to reputation and loss of business opportunities as real harm suffered by entry of judgment. 63 A.L.R.3d 622. In reliance on this perceived harm, prepayment of judgment has been rejected as a criteria to enabling an insured to bring suit. Likewise, the assignee, as holder of the rights of the assignor, should not have to demonstrate payment on the judgment before a cause of action arises.

Additionally, we think a prepayment rule is inappropriate for it fails to encourage an insurer to respond to its duty to the insured while rewarding the opposite when the insured is believed to be insolvent and unable or unwilling to challenge the actions of the insurance company. Under these circumstances, the injured party is left without a means of recovery and the insurance company insulated from liability.

It should also be noted that a prepayment rule could encourage multiplicity of lawsuits where a partial payment

is made to the judgment creditor and the insured seeks recovery of that amount from the insurer. Each time a payment is made, the insured can then seek recovery based on that payment. *See* 63 A.L.R.3d at 632. We do not think this is in the best interest of judicial economy nor does it provide appropriate relief to the injured party.

Finally, in support of our decision, we look again to the rationale in *Gray* for allowing the assignment of rights against an insurer without the insured having satisfied the judgment. The court stated:

> The main public policy reason against the result we reach, ... is that it will foster fraud and collusion between the insured and the injured claimant. We disagree.... The possibility of collusion between a judgment holder and an insured is no way increased by an assignment. If the insured's liability on the judgment is not affected by the assignment, the interests of the parties are similarly unaffected. Whether the action would be brought in the name of the policy-holder or in the name of the assignee, the policy-holder would be intent upon relieving himself of the excess judgment, and the assignee would be seeking to secure the balance due him. If the insured's liability is terminated by the assignment, as in the present case, the possibility of collusion is more remote. Having been relieved of the judgment, the insured no longer has any pecuniary interest in the outcome of the litigation. *Gray v. Nationwide Mutual Insurance Co.*, 207 Pa.Super. [1] at 10, 11, 214 A.2d [634] at 639. (Dissenting opinion by Hoffman, J., in which Ervin, P.J., and Watkins, J., joined.)
>
> Permiting an insured to assign his claim to the injured claimant would put the claimant on more of an equal footing with the insured's insurance company in settlement negotiations without tipping the balance against an insurer who could still refuse to settle in good faith.

*Gray, supra*, 422 Pa. at 510–511, 223 A.2d at 12–13.

Having concluded that the assignment arising from the supplemental agreement is valid and would allow the as-

signee to seek recovery of the settlement amount, we must address the issue of whether the Order denying amendment of the complaint is appealable.

■ "In ascertaining what is a final appealable order ... we must look beyond the technical effect of the adjudication to its practical ramification." *Praisner v. Stocker*, 313 Pa.Super. 332, 459 A.2d 1255 (1983) citing *Jackson v. Moultrie*, 288 Pa.Super. 252, 431 A.2d 1033 (1981). "The finality of an order is a conclusion which can be reached only after an examination of its ramifications." *Praisner, supra*, 313 Pa.Superior Ct. at 337, 459 A.2d at 1258, citing *Pugar v. Greco*, 438 Pa. 68, 394 A.2d 542 (1978). When an Order so restricts the pleader as to virtually put him out of court on the cause of action he seeks to litigate, it is a final appealable Order. *Trevellini v. West Realty Co.*, 289 Pa.Super. 84, 432 A.2d 1062 (1981).

■ In the present case, the denial of appellant's petition to amend would have limited the damages recoverable to the out-of-pocket defense costs.[2] Because we think the amendment, if allowed, would clearly permit appellant to seek recovery of the $250,000 judgment entered against Ayers, denial of the petition to amend constitutes an appealable Order. Although appellant would not technically be out of court, the practical result is that he would not be able to seek recovery of damages to which he claims entitlement.

The next issue we must address is the propriety of the Order denying appellant's petition to amend their complaint.

The court determined that the change did not alter the ability of Barr as assignee to recover any more than he would under the original complaint and refused to allow amendment.

The decision to grant or deny a petition to amend a pleading is a matter of judicial discretion. It is established, however, that amendments to pleadings should be liberally

---

2. We are not called upon here to decide whether the court's determination, that under the original agreement only defense costs are recoverable, is proper.

allowed so as to insure a determination of cases on their merits. *Gutierrez v. Pennsylvania Gas and Water Co.,* 352 Pa.Super. 282, 507 A.2d 1230 (1986); *Gallo v. Yamaha Motor Corp. U.S.A.,* 335 Pa.Super. 311, 484 A.2d 148 (1984). "Amendments should be allowed with great liberality at any stage of the case unless they violate the law or prejudice the rights of the opposing party." *Gutierrez, supra,* 352 Pa.Superior Ct. at 286, 507 A.2d at 1232 (citations omitted).

Pa.R.C.P. 1033 provides:

**Rule 1033. Amendment**

A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. *The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading,* even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

(Emphasis added).

■ In the present case, the appellant sought to amend the pleading by including a new agreement which involved entry of judgment against Ayers. We previously discussed our disagreement with the lower court that indemnity principles are applicable in this situation and concluded that appellant would have a cause of action as assignee of Ayers' rights under the amended complaint. We must thus conclude that the court abused its discretion in refusing to allow the amended complaint.

In so holding, we reject appellee/Cramer's argument that the amended complaint is barred by the statute of limitations. Although this may be true, if a new cause of action was asserted, such is not the case here. The cause of action is based on the alleged failure of the insurance company to defend and the failure of the insurance company and its agents to provide the proper coverage. This was not changed at all by the proposed amendment and the

question of whether the statute of limitations has run is not at issue.

■ We will finally comment on the issue of Ayers' liability to appellant/Barr. Appellee/Cramer maintains that this liability must be proven before proceeding to the issue in this case. In response to this contention, we look to the decision of this Court in *Ridgeway Court Inc. v. James J. Canavan Ins.*, 348 Pa.Super. 136, 501 A.2d 684 (1985). In *Canavan*, an individual injured on his job site brought suit against two corporate owners. A settlement was reached between the parties and judgment entered against the corporations in the amount of $1,250,000. There was only $100,000 in insurance available, which was paid to the injured party. As part of the settlement, the corporations assigned their claim against their insurance broker for failure to provide adequate coverage. In exchange, the corporations were relieved from further liability regardless of the outcome of the assignees action against the insurance broker.[3] The question of whether the liability of the corporations to the injured party must be established was raised and the *Canavan* Court, relying on *Martinque Shoes Inc. v. New York Progressive Wood Heel Co.*, 207 Pa.Super. 404, 217 A.2d 781 (1966), held that proof of liability must be provided in the professional negligence trial. We think the underlying liability is thus an issue which can be raised by appellees, but there is no requirement that a separate prior litigation be held, rather the issue is a proper one in this action. *See also Brakeman v. Potomac Insurance Co.*, 236 Pa.Super. 320, 344 A.2d 555 (1975) affirmed with directions 472 Pa. 66, 371 A.2d 193 (1977).

Having discussed the issues raised by the parties and finding the lower court improperly refused to allow appellant to amend his complaint, the Order denying the petition to amend is reversed. The case is remanded to allow

3. We did not refer to *Canavan* in our discussion of the assignees rights to recover the judgment amount because that issue is not discussed therein.

amendment of the complaint and for the case to proceed. Jurisdiction Relinquished.