J-A02045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CARRIE KELLY, ADMINISTRATRIX OF ESTATE OF JUSTIN KELLY, DECEASED, AS ASSIGNEE OF DALLAS MATTHIAS, D/B/A DALLAS MATTHIAS TREE SERVICE | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| H.C. KERSTETTER CO., CENTRAL INSURERS  GROUP, INC. AND THOMAS BERICH | : : : : | |
| | : | No. 696 MDA 2015 |

Appeal from the Order Entered March 20, 2015
in the Court of Common Pleas of Berks County Civil Division
at No(s): 09-7399

BEFORE: PANELLA, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                     **FILED APRIL 27, 2016**

Appellant, Carrie Kelly, Administratrix of Estate of Justin Kelly, Deceased, as Assignee of Dallas Matthias,[1] d/b/a Dallas Matthias Tree Service, appeals from the order entered in the Berks County Court of Common Pleas granting the motion for summary judgment of Appellees, H.C. Kerstetter Co., Central Insurers Group, Inc., and Thomas Berich. Appellant contends the trial court erred in finding that the claims against Appellees were barred by the statute of limitations.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note that there is a discrepancy in the spelling of Matthias.  In certain documents in the record, Matthias is spelled with one "t".

The trial court summarized the facts of this case as follows:

Dallas Mathias (hereinafter, Assignor) started a tree service business in 2004. The business was organized as a sole proprietorship with no employees. Justin Kelly (hereinafter, Decedent) was one of several independent contractors with his business.

Assignor obtained insurance for his business from [Appellees]. [Appellee,] Tom Berich, was Assignor's insurance contact. Assignor never met [Appellee] or anyone else from [Appellees'] companies. All business was accomplished through telephone conversations or the exchange of documents. Assignor obtained a commercial auto insurance policy from United Financial Casualty Company and a commercial general liability policy from Nautilus Insurance Company through [Appellees]. Assignor did not purchase an umbrella policy for his business. [Appellees] needed Assignor's permission to change or bind insurance on his behalf.

Assignor required the independent contractors to maintain their own commercial general liability insurance which was procured through [Appellees]. Assignor also made his workers, including Decedent, sign a document entitled "Sub-Contractor Agreement and Insurance Waiver Acknowledgment" (Agreement). The purpose of Agreement was to relieve Assignor from liability and to make it clear to the workers for which insurance coverage they were responsible and which he was. The workers were responsible for liability, health, and worker's compensation insurance for their injuries. Assignor was responsible for liability insurance for the work that was performed on the jobs. Agreement included a provision that Assignor would be held harmless if the worker suffered bodily injury while performing his duties. Assignor knew that the Nautilus policy did not provide coverage to him for the workers' injuries.

On November 2, 2006, Decedent sustained fatal injuries after falling out of a bucket truck while working for Assignor. A co-worker confirmed that Decedent had smoked marijuana with him prior to their arrival on the jobsite.

[On March 14, 2007,] Nautilus denied coverage for Decedent's injuries. [On June 14, 2007,] Decedent's estate sued Assignor.[2] United provided a defense for Assignor under a reservation of rights. [Appellant] and Assignor entered into a Release and Assignment Agreement on April 17, 2008. Pursuant to the settlement, United paid $125,000.00 to [Appellant[3]]. Assignor agreed to the entry of a consent judgment against himself[4] and

---

[2] **See** Complaint, Carrie Kelly, Administratrix of the Estate of Justin D. Kelly, Deceased v. Dallas Mathias, Jr., individually and t/a Dallas Mathias Jr. Tree Service, 6/14/07, at R.R. 188a. For convenience, we refer to the reproduced record where applicable.

[3] The terms of the release were as follows:

## II. <u>RELEASE OF UNITED FINANCIAL CASUALTY COMPANY</u>

For and in consideration of its payment of $125,000 on behalf of its insured, Dallas Mathias, Jr. t/a Dallas Mathias, Jr. Tree Service, Carrie Kelly, as Administratrix of the Estate of Justin D. Kelly, Deceased, hereby releases and discharges United Financial Casualty Company from any and all further claims, rights or causes of action based on statutory law, common law or its policy of insurance which were alleged or which may have been alleged in the Berks County action titled ***Carrie Kelly, Administratrix of the Estate of Justin D. Kelly, Deceased v. Dallas Mathias, Jr., Individually and t/a Dallas Mathias, Jr. Tree Service***. The United Financial Casualty Company's declaratory judgment action will be marked settled, discontinued and ended.

R.R. at 379a.

[4] The agreement provided as follows:

## III. <u>JUDGMENT BY CONSENT</u>

Dallas Mathias, Jr. hereby agrees that a judgment by consent against him can be entered by Carrie Kelly as

assigned to [Appellant] the right to pursue claims for one million dollars from Nautilus and [Appellees[5]].

_____

Administratrix of the Estate of Justin D. Kelly, Deceased, for the total amount of $1,125,000 with an indication that, upon payment of the $125,000 on his behalf from United Financial Casualty Company, that $125,000 portion of the judgment can be marked as satisfied.

*Id.*

[5] Instantly, the assignment agreement provided as follows:

**IV. ASSIGNMENT AGREEMENT**

[Appellant], Carrie Kelly, as Administratrix of the Estate of Justin D. Kelly, Deceased ("Assignee"), agrees and covenants to postpone collection, enforcement, garnishment and/or execution proceedings against [Appellee] Dallas Mathias, Jr., his heirs, executors, administrators, successors and assigns ("Assignor") for Assignor's $1,000,000 portion of the $1,125,000 judgment by consent.

Assignee's agreement to postpone collection, enforcement, garnishment and/or execution proceedings against Assignor for the amount due and owing, is for, and in consideration of Assignor's assignment of any and all rights, interests, claims, causes of action and/or potential causes of action including, but not limited to, all contractual and extra contractual claims, actions for common law and statutory bad faith, actions for declaratory judgment, breach of fiduciary duty, negligence, breach of contract and misrepresentation and any other claims or causes of action of any nature whatsoever, in law or in equity, which Assignor has and/or may have against H.C. Kerstetter Co. and any insurer other than United Financial Casualty Company, as well as any parent company or companies, affiliates, subsidiaries, or any other entity or insurer other than United Financial Casualty Company that may be required to provide coverage to, and/or indemnify Assignor with regard to the Berks County

- 4 -

Trial Ct. Op., 6/16/15, at 1-3.

Appellant filed a writ on June 15, 2009 and subsequently a complaint on July 17, 2009. R.R. at 1a, 58a. Appellees filed a motion for summary judgment. The trial court granted the motion. This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a responsive opinion.

Appellant raises the following issues for our review:

> A. Where [Appellees] insurance brokers admit that the insured tree trimming business was relying on them to advise, procure and maintain proper coverage; where such brokers failed to advise the insured that important coverage was excluded; and insured's expert has shown that [Appellees] breached their duty of care; did the trial court err in granting summary judgment where the record raises genuine issues of material fact showing negligence

---

> action of Carrie Kelly, as Administratrix of the Estate of Justin D. Kelly, Deceased v. Dallas Mathias, Jr.

*Id.* at 380a.

We note that in *Barr v. Gen. Accident Grp. Ins. Co. of N. Am.*, 520 A.2d 485 (Pa. Super. 1987), this Court held that

> a plaintiff can agree to enter judgment against an insured and also agree not to enforce the judgment directly against the insured in exchange for the assignment of the insured's rights against his insurance company and their agents. . . . [T]he assignee can seek recovery of the judgment amount in an action against the insurance company and their agents for failure to provide adequate coverage and failure to defend.

*Id.* at 487.

of [Appellees], insurance brokers, in failing to advise, maintain, and procure adequate liability coverage for assignor, contractor, Matthias, with respect to the lawsuit on behalf of subcontractor, decedent, Justin Kelly?

B. Did the trial court err in giving effect to certain purported exculpatory language in a sub-contractor agreement?

C. Did the trial court erred [sic] in granting summary judgment with respect to statute of limitations issues where this action against insurance agents or brokers, for failure to procure liability insurance coverage was filed within two years of its accrual date, namely within two years of the date of the filing of the Complaint in the underlying action?

Appellant's Brief at 3-4.

Appellant contends the trial court erred in granting summary judgment because there are "material issues of fact that [Appellees] breached duties of care with respect to advising, maintaining, and procuring adequate liability coverage for the insured, assignor, Matthias, resulting in his lacking adequate liability coverage with regard to the subject fatal accident to one of his subcontractors, Justin Kelly . . . ." *Id.* at 15. Appellant argues that the exculpatory language of the subcontractor agreement was unenforceable. *Id.*

Appellant claims the statute of limitations "for a cause of action against a broker for failure to procure adequate liability insurance is at earliest the date the Complaint to be covered is filed against the insured." *Id.* at 20. Appellant avers that "[t]he date of the earlier pre-lawsuit denial letter, relied upon by the lower court, does not change the fact this lawsuit

was timely." **_Id._** Appellant argues that "the underlying Complaint whose coverage was in issue was filed on June 14, 2007. This action regarding the brokers' failure to procure adequate liability insurance to cover that complaint was timely filed within two years of that date in accord with applicable procedural rules, on Monday, June 15, 2009."[6] **_Id._** at 20. Appellant concludes that the action was timely filed. **_Id._**

We address Appellant's third issue first because it is dispositive. Our review is governed by the following principles:

> The standards which govern summary judgment are well settled. When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion. . . .

---

[6] Appellant cites **_M & M High, Inc. v. Essex Ins. Co._**, 2002 WL 31681995 (Pa. Com. Pl. 2002), in support of his argument that the filing of the complaint triggers the running of the statute of limitations against the insurer. Appellant's Brief at 17. However, Court of Common Pleas decisions "are not binding precedent for this Court." **_Discover Bank v. Stucka_**, 33 A.3d 82, 87–88 (Pa. Super. 2011).

***Varner-Mort v. Kapfhammer***, 109 A.3d 244, 246-47 (Pa. Super. 2015) (citation omitted).

In ***Adamski v. Allstate Ins. Co.***, 738 A.2d 1033 (Pa. Super. 1999), the appellant, David Adamski, was driving a motorcycle and was involved in an accident with an automobile driven by Ronald Miller, the insured. ***Id.*** at 1034. The appellant brought an action against the appellee, Allstate Insurance Company, the insured's assignee, for breach of duty to defend and indemnify. ***Id.*** at 1035. The appellee filed a motion for summary judgment based upon the statute of limitations. ***Id.*** The court entered summary judgment in favor of the insurer.

On appeal in ***Adamski***, this Court addressed the issue of when the statute of limitations was triggered. The Court opined:

> The . . . action was commenced on November 9, 1993, when appellants filed a writ of summons. On January 17, 1997, appellants filed a complaint alleging that appellee committed common law and statutory bad faith[7] by failing to defend, indemnify or otherwise protect the interests of Ronald Miller. On June 23, 1998, appellee filed a motion for summary judgment. In its motion, appellee argued that appellants' claims for bad faith were barred by the statute of limitations and should be dismissed for failure to state a cause of action.
>
> \* \* \*
>
> Although appellants did not receive an assignment from Miller until August 19, 1992, more than two years after the effective date of section 8371, they did not acquire greater

---

[7] 42 Pa.C.S. § 8371.

rights than Miller possessed to pursue a bad faith action. ***See Smith v. Cumberland Group***, [ ] 687 A.2d 1167[, 1172] ([Pa. Super.] 1997) ("Where an assignment is effective, the assignee stands in the shoes of the assignor[.]"). Since all of the acts alleged by appellants "[arose] from the original . . . denial of benefits" and were not "independent of [the] initial denial of coverage," they do not constitute separate acts of bad faith. Accordingly, since appellants do not allege any separate acts of bad faith that occurred on or after the effective date of section 8731, their statutory bad faith claim is barred.

\* \* \*

Initially, as noted, appellants misconstrue appellee's letter of April 2, 1986. It was not merely an initial "refusal to pay benefits." Instead, **appellee clearly disclaimed any and all obligations and refused all further actions with regard to existing or future claims against Miller**. Thus, reasonably construed, the letter was a refusal to cover, defend, indemnify or otherwise protect Miller. Moreover, we reject appellants' claim that they were required to file suit only when "the full extent of litigation damages" was known and "the need for indemnification" arose. To the contrary, our Court has repeatedly held that, for purposes of the statute of limitations, a claim accrues when a plaintiff is harmed and not when the precise amount or extent of damages is determined. Instantly, **the alleged harm to Miller (and thus appellants as assignees) occurred when appellee's position was made clear by the 1986 letter** and appellee maintained that position by subsequently refusing to defend or indemnify Miller.

\* \* \*

It is hornbook law that a statute of limitations begins to run as soon as the right to institute suit arises.

- 9 -

*Id.* at 1035, 1039, 1041-42 (some citations and footnotes omitted and emphases added).[8]

---

[8] Appellant's reliance upon *Selective Way Ins. Co. v. Hosp. Grp. Servs., Inc.*, 119 A.3d 1035 (Pa. Super. 2015) (*en banc*) is unavailing. *See* Appellant's Brief at 18. This Court in *Selective* addressed the issue of when a cause of action for a declaratory judgment action filed by an insurance company accrues, and rejected the denial of coverage as the triggering point for the statute of limitations.

> A cause of action for a declaratory judgment accrues when an actual controversy exists between the parties. Our Supreme Court has stated that "[t]he court's role in the declaratory judgment action is to resolve the question of coverage to eliminate uncertainty. If the insurer is successful in the declaratory judgment action, it is relieved of the continuing obligation to defend." Thus, according to our Supreme Court, **if an insurance company is uncertain about its duty to defend an insured in a third party's action, it is expected and anticipated that the insurance company will bring a declaratory judgment action concerning its duty to defend prior to denying coverage to an insured.** The denial of coverage certainly could be when an actual controversy arises between an insurance company and an insured, warranting the filing of a declaratory judgment action. *See, e.g.*, *Zourelias* [*v. Erie Ins. Grp.*], 691 A.2d [963,] 964 [Pa. Super. 1997]; *see also* 42 Pa.C.S.A. § 7534 ("A contract may be construed [under the Declaratory Judgments Act] either before or after there has been a breach thereof."). It cannot, however, be the only basis for finding an actual controversy exists as Selective advocates. Such a holding (that the denial of coverage is the point in time when an actual controversy arises) would eliminate an insurance company's ability to bring a declaratory judgment action prior to denying or terminating the provision of a defense for an insured, which is in direct contravention to the above-quoted statement by our Supreme Court.

In ***Rancosky v. Washington Nat. Ins. Co.***, 130 A.3d 79 (Pa. Super.

2015), citing ***Adamski***, this Court opined:

> Generally, for purposes of applying the statute of limitations, **a claim accrues when the plaintiff is injured**. ***See Adamski v. Allstate Ins. Co.***, 738 A.2d 1033, 1042 (Pa. Super. 1999). In the context of an insurance claim, a continuing or repeated denial of coverage is merely a continuation of **the injury caused by the initial denial**, and does not constitute a new injury that triggers the beginning of a new limitations

---

Selective's argument that the statute of limitations for it to file a declaratory judgment action regarding its duty to indemnify an insured in a third party's action should not commence until it denies coverage fails for the same reason. We agree with Selective that an insurance company's substantive duty to indemnify an insured in a third party's action does not arise until there is a verdict. A declaration regarding an insurance company's duty to defend, however, is inextricably intertwined with its duty to indemnify because both are based upon a determination of whether the insurance policy in question provides coverage for the claims made. ***See Gen. Acc. Ins. Co. of Am.*** [***v. Allen***], 692 A.2d [1089,] 1095 [Pa. 1997] ("Although the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage."); ***Mut. Ben. Ins. Co. v. Haver***, [ ] 725 A.2d 743, 747 ([Pa.] 1999) ("[I]n determining whether a carrier has a duty to defend or indemnify an insured we look to the complaint filed against the insured."). If an insurance company does not have a duty to defend an insured in a third party's action, it cannot have a duty to indemnify. ***Am. Nat. Prop. & Cas. Companies v. Hearn***, 93 A.3d 880, 884 (Pa. Super. 2014).

***Id.*** at 1048-49 (emphasis in original and some citations omitted and emphasis added). In the case *sub judice*, Appellee denied coverage prior to the filing of the underlying complaint. Appellant, as assignee of the insured, instituted the action against Appellee. ***See Barr***, 520 A.2d at 487.

- 11 -

period. ***See id.*** at 1042 (holding that the insured may not separate initial and continuing refusals to provide coverage into distinct acts of bad faith).

***Id.*** at 99 (emphases added); ***see also Jones v. Harleysville Mut. Ins. Co.***, 900 A.2d 855, 858 (Pa. Super. 2006) ("trial court correctly recognized that the applicable limitations period for [the a]ppellants' bad faith claim is two years from the date of the first claim denial. ***See Ash v. Cont'l Ins. Co.***, 861 A.2d 979, 984 (Pa. Super. 2004). ***Adamski v. Allstate Ins. Co***., 738 A.2d 1033, 1040 (Pa. Super. 1999)."

Instantly, the trial court opined:

> [Appellant] submits that this court erred with respect to statute of limitation issues because this case was filed within two years of its accrual date, which is within two years of the date of the underlying action. This issue is without merit.
>
> The statute of limitations for a claim of professional liability is two years. The statute begins to run when the professional breaches a duty, and is tolled only when the client, despite the exercise of due diligence, does not discover the injury or its cause. Assignor knew by letter dated March 14, 2007, that [Appellee] Nautilus disclaimed coverage. Assignor assigned his rights for all claims against [Appellees] to [Appellant], but the assignment did not affect the statute of limitations. [Appellant] did not file a writ until June 15, 2009, which was three months after the statute of limitations ran on March 14, 2009.[9]

---

[9] We note that March 14th fell on a Saturday. ***See*** 1 Pa.C.S. § 1908 (providing that when last day of any period of time referred to in any statute falls on Saturday, Sunday, or legal holiday, such day shall be omitted from computation); ***In re Nomination Papers of Lahr***, 842 A.2d 327, 333 n.6 (Pa. 2004) ("The courts have generally employed section 1908 in circumstances that require counting forward")"

- 12 -

Trial Ct. Op. at 4-5. We agree no relief is due.

In the case *sub judice*, the March 14th denial of coverage letter provided, *inter alia*, as follows:

> Re: Company: Nautilus Insurance Company
> Claim Number: 10028900
> Insured: DALLAS MATHIAS JR
> Claimant: Justin Kelly, deceased
> Policy Number: C NC 0000549482
> Date of Loss: 11/02/06
> Policy Period: 05/03/2006 to 05/03/2007
>
> Dear Mr. Mathias,
>
> Nautilus Insurance Company is in receipt of the above captioned claim . . . on behalf of the estate of Justin Kelly. . . . [A]lso included [is] a copy of a draft Complaint that . . . may [be] file[d] against you with regards to this incident. It is alleged that Justin Kelly, while an employee of Dallas Mathias Jr. Tree Service, fell from a bucket truck and suffered fatal injuries. This letter will also confirm our conversation of March 7, 2007 regarding this incident. For reasons listed below, **there is no coverage for this claim**.
>
> \* \* \*
>
> It must be stated immediately that after reviewing the policy relative to this loss, **it is the position of Nautilus Insurance Company that the Commercial General Liability policy issued to you does not provide coverage for the indemnification or defense of any claims being made as a result of this loss.** Therefore, it is recommended that without delay you notify any and all other insurance companies that insure you for the tree service.

R.R. at 281a.[10]

Appellant, as assignee, stands in the shoes of the Assignor. *See Adamski*, 738 A.2d at 1039. Appellee clearly denied coverage for the claim in its March 14, 2007 letter. Thus, the alleged harm to Assignor and thus Appellant as assignee occurred when Appellee made its position clear in the March 14th denial of coverage letter. *See id.* at 1041-42; *accord Rancosky*, 130 A.3d at 99. The statute of limitations began to run on that date. *See Adamski*, 738 A.2d at 1042. Appellant filed the writ on June 15, 2009, more than two years after the denial-of-coverage letter. Therefore, the claim was barred by the statute of limitations. *See id.* Accordingly, we discern no error of law or abuse of discretion by the trial court in finding that Appellant's claim was barred by the statute of limitations. *See Kapfhammer*, 109 A.3d at 246-47. Accordingly, we affirm the order of the trial court granting Appellees' motion for summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2016

---

[10] We note that the denial of coverage letter included a detailed recitation of the terms of the policy. *See* R.R. at 281a-87a.